THE CONSUMERS COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(FRANK HILL, Defendant in Error.)

*Opinion filed December 23, 1926.*

1. WORKMEN'S COMPENSATION—*general rule as to when compensation is payable for an injury caused by exposure to elements.* Where an employee because of his duties is exposed to a special or peculiar danger from the elements or weather conditions greater than that to which others in the community are subjected and an unexpected injury is sustained thereby, the injury constitutes an accident arising out of and in the course of the employment and compensation is payable therefor, but if the injury, under the circumstances of the employment, was merely a consequence of the severity of the elements to which persons in the locality, whether so employed or not, were equally exposed, it is not compensable.

2. SAME—*when injury from frost-bite is not an accident under Compensation act.* Frost-bite suffered by an employee while engaged at his work on a very cold day is not an accident arising out of his employment, within the meaning of the Compensation act, where the employee was not by reason of his occupation exposed to a special or peculiar danger from freezing greater than that shared by other persons in the same locality, the employer having provided a place for employees to warm themselves and the evidence showing that other employees engaged in the same work at the same time and place did not suffer frost-bite.

DUNN, DUNCAN and THOMPSON, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. HARRY M. FISHER, Judge, presiding.

MCKINLEY & SCHMAUCH, (W. W. SCHMAUCH, of counsel,) for plaintiff in error.

HAROLD J. CLARK, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Frank Hill filed with the Industrial Commission an application for the adjustment of his claim for compensation against the Consumers Company. He charged that on

December 18, 1922, he suffered injuries through frost-bite while engaged in shoveling coal. On the hearing before the arbitrator it was stipulated that Hill was at the time an employee of the Consumers Company; that both parties were under the Workmen's Compensation act, and that the employer was notified of the accident and that demand for compensation was made within the time prescribed by the act. The arbitrator awarded Hill $12 per week for 15½ weeks, the period of temporary total incapacity, and a like sum each week for 57½ weeks under paragraph (e) of section 8 of the act. The award was approved by the Industrial Commission and its decision was affirmed by the circuit court. On a petition by the company this court granted a writ of error, and the cause is here for review.

At times during a number of years, both winter and summer, Hill had been employed by the Consumers Company to shovel coal in its yards in Evanston. On the morning of December 18, 1922, he sought employment at yard No. 17, located on Howard street, in that city. This yard is enclosed on one side by a cement retaining wall fifteen or sixteen feet high, and on the other sides by a board fence and a brick wall, six and fifteen feet high, respectively. A trestled switch-track extends into the yard, and coal bins are built under it which reach from the ground to the elevation of the track. A barn partly one story and in part two stories in height and about thirty feet long from north to south is located in the west part of the yard. There is also a shanty, which is heated and in which the employees keep their coats, eat their lunches and in cold weather warm themselves. Hill was put to work at seven o'clock in the morning of the day in question, assisting other men in shoveling coal from one of the bins under the switch-track trestle to a conveyor, which was operated by electricity and which carried the coal into delivery trucks or wagons. The process required Hill to raise the coal a few feet from the ground with an ordinary shovel and to deposit it on the conveyor.

After one truck or wagon was loaded it would be removed and another would follow. Six men, including Hill and the yard foreman, were engaged in this work. On that day the temperature at seven A. M. was one degree below zero and an hour later it was a degree lower. Thereafter it became warmer, and at noon the temperature was eight and at six P. M. twelve degrees above zero.

In doing his work Hill wore a pair of unlined leather gloves. He testified that his hands became cold shortly after he began shoveling coal; that he informed the foreman about 11 :30 A. M. that he had frozen his hands; that the foreman told him not to put them near the heat but to wash them in the snow; that after doing so he warmed his hands so that he could remove his gloves; that he returned to work and rested an hour at noon, when he noticed that his hands were becoming weak and numb; that he continued to shovel coal in the afternoon; that he knew plaintiff in error had shanties in its yards and that the employees used them for their coats, tools and to eat their lunches, but that he did not know that the men occupied them to warm themselves; that he did not see any of the men go into the shanty on the day his hands were frozen except at noon, and that the foreman told him he had better not go into the shanty if he wanted his job. On cross-examination Hill admitted that this remark was not addressed to him but to an employee named Smith, and that the foreman said nothing whatever to him about going into the shanty. Hill ceased to work for plaintiff in error on the evening of the same day. He further testified that there was a swelling in his hands; that a part of the third finger of his right hand above the base of the nail was removed; that the second, third and fourth fingers of each hand were stiff to some extent, and that he could not use a shovel because he could grip it only with the thumb and two fingers.

On the part of plaintiff in error the foreman testified that the shanty was for the use of all the men in the

yard; that they went in and out of it on the day in question, and that he saw two men leave it between ten and eleven o'clock that forenoon.  He denied that he told Hill he had better not go into the shanty if he wanted his job.  He testified that when Hill came to him in the morning he gave him a shovel and put him to work; that all he said to him during the whole day was to direct him to assist in moving the conveyor, and that he did not learn that Hill had frozen his hands until two days afterwards.

Ross Smith, who shoveled coal with Hill, testified that he heard him say in the morning that his hands were cold; that he and other men, including Hill, went to the shanty about eight o'clock to warm themselves and that they went there three times more during the forenoon, and that Hill accompanied them each time; that Hill continued to work, wearing a pair of unlined leather gloves; that when he was loading the first truck he tried to pull the gloves off but could not do so, and that as soon as that truck was loaded Hill went to the shanty, and that because of the rise in temperature no one was compelled to seek its shelter during the afternoon to warm himself.  It appears that Hill was the only employee of plaintiff in error whose hands were frozen.

The question in dispute is whether the injuries suffered by defendant in error arose out of his employment.  Injuries resulting from exposure to weather conditions, such as heat, cold, ice, snow or lightning, are generally classed as risks to which the general public is exposed and not within the purview of workmen's compensation acts, although the injured person, at the time he received his injury, may have been performing duties incident to and in the course of his employment.  The rule is generally recognized, however, that if an employee, because of his duties, is exposed to a special or peculiar danger from the elements,—a danger that is greater than that to which other

persons in the community are subjected,—and an unexpected injury is sustained by reason of the elements, the injury constitutes an accident arising out of and in the course of the employment within the meaning of workmen's compensation acts. If the character of the employment is such as to intensify the risks that arise from extraordinary natural causes, an accident under such circumstances is one arising out of the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. If the accident, under the circumstances of the employment, was merely a consequence of the severity of the elements, to which persons in the locality, whether so employed or not, were equally exposed, it is not compensable. *Alzina Construction Co.* v. *Industrial Com.* 309 Ill. 395; *Central Illinois Public Service Co.* v. *Industrial Com.* 291 id. 256; *Pekin Cooperage Co.* v. *Industrial Com.* 285 id. 31; *McNicol's case,* 215 Mass. 497; 1 Honnold on Workmen's Compensation, sec. 117, and note on p. 425; *Karemaker* v. *S. S. Corsican,* 4 B. W. C. C. 295; *Warner* v. *Couchman,* 1 K. B. (1911) 351, affirmed on appeal in 1 A. C. (1912) 35; *Laspada* v. *Public Service Railway Co.* 38 N. J. L. 102.

It may not be improper to review some of the cases illustrative of the foregoing rule. In *Karemaker* v. *S. S. Corsican, supra,* a seaman was at work in the harbor at Halifax, Nova Scotia. The weather was very cold and the workman's hands were badly frost-bitten through handling frozen ropes. He was denied compensation on the ground that frost-bite was one of the normal incidents to which everybody in that climate was subjected. *Warner* v. *Couchman, supra,* is a leading case. A journeyman baker suffered frost-bite while driving a cart in delivering bread to customers. The weather at the time was very cold, with rain and sleet at intervals. It was held that there was nothing

in the nature of the employment which exposed the applicant for compensation to more than the ordinary risk of cold which any person working in the open experienced on that day.   *Laspada* v. *Public Service Railway Co. supra,* was a case where a laborer's toes were frozen while removing snow from his employer's railway tracks.   The injury resulted in the amputation of all the toes from his left foot and three from his right foot.   Compensation was denied because there was nothing in the petitioner's employment which subjected him to more than the ordinary risk of frost-bite to which other persons working in the open were exposed on the same day, nor was it shown that the injury was caused by any particular circumstance in connection with the employment.   In *State* v. *District Court,* 138 Minn. 131, the workman froze his thumb while cutting and handling timber and making roads for swamping.   He was four or five miles from camp, the weather was severely cold, the building of fires was not permitted and no facilities for warming were provided.   Compensation was awarded on the ground that the character of the employee's work subjected him to a risk of freezing not shared by the community generally.   In *McManaman's case,* 224 Mass. 554, a longshoreman's hands were frozen while engaged in unloading a steamer in a temperature four degrees below zero.   The court found that the cold was more severe on the pier extending into the harbor than that to which a person working in the open was ordinarily exposed and that the petitioner was not at liberty to stop his work to prevent the freezing of his hands.   Hence the employee was allowed compensation for his injuries.   *Ellingson Lumber Co.* v. *Industrial Com.* 168 Wis. 227, was a case in which a lumberjack's feet were frozen while working as a swamper three-quarters of a mile from camp, in a temperature twenty-six degrees below zero.   Through a mistake in orders an insufficient number of logs was ready for shipment the next morning and the employee was

compelled to work uninterruptedly. Compensation was awarded because the hazard of freezing was substantially increased by reason of the nature of the services the employee was required to perform. In *Larke* v. *John Hancock Mutual Life Ins. Co.* 90 Conn. 303, an insurance solicitor was required to drive long distances in an open vehicle to visit certain places at definite times, irrespective of weather conditions. He suffered frost-bite on a severely cold day, resulting in death. The schedule imposed by the employer subjected the employee to unusual exposure, and an award for compensation was sustained. In *Days* v. *Trimmer & Sons,* 162 N. Y. Supp. 603, it was held that an employee who sustained a frost-bite while engaged in carrying and handling wet coal in a storm had suffered risks peculiar to his employment and was entitled to compensation. In *Canada Cement Co.* v. *Pazuk,* 22 Que. K. B. 432, 7 N. C. C. A. 982, the employee was required to work ten hours in loading stone from a quarry by hand. The surroundings were bleak, the temperature was eighteen degrees below zero and no shelter was afforded. Compensation for injuries from frost-bite was awarded. Finally, in *Nikkiczuk* v. *McArthur,* 9 Alberta, 503, 28 D. L. R. 279, a laborer's feet were frozen while he was engaged in railroad construction work. The temperature was about sixty degrees below zero, and he worked from seven A. M. until five or six o'clock P. M. without shelter. His injuries, it was held, arose out of his employment.

Whether defendant in error was required to work under such unusual conditions as to make his injury compensable must be determined from the evidence. The evidence shows the contrary. The yard in which he was employed was enclosed by a board fence and two walls, one of brick and the other cement. The coal bins extended from the ground to the trestle above. West of the trestle was a barn. Defendant in error stood on the ground while at work. He was not, therefore, exposed to the severity of

a cold winter day at an elevation or other position of danger but was afforded some shelter by the fence, walls, barn and coal bins. In addition, a heated shanty was provided in which the men could warm themselves.

Defendant in error argues, however, that he was compelled to work continuously, and for that reason could not avail himself of the opportunity to warm his hands in the shanty. He admitted, on cross-examination, that the foreman's remark to the effect that going into the shanty might mean the loss of his job was addressed to George Smith, another employee, and not to defendant in error. The cause of the foreman's remark to Smith does not appear. It is as susceptible of the interpretation that it was a warning not to abuse the privilege afforded by the shanty as that it constituted an order forbidding its use altogether. Smith's previous conduct may have justified the foreman's statement, and if so, it could have no general application. In any event it did not apply to defendant in error, for he admitted that the foreman said nothing to him about going to the shanty. Nor did he heed the remark, for Ross Smith, who worked with him, testified that defendant in error went to the shanty several times during the forenoon to warm himself.

Of the six men who shoveled coal in the same yard at the time, defendant in error was the only person who experienced the frost-bite of his hands. That he chose to wear unlined leather gloves in doing his work is immaterial in the instant case unless in the performance of his duty he was required to wear such gloves. There is no proof of any such requirement. The fact that the other workmen did not suffer the injury of which he complains, although they were engaged in the same work at the same time and place, shows that he was not, by reason of his occupation, exposed to a special or peculiar danger from freezing greater than that shared by other persons in the

same locality. It follows that the accident did not arise out of the employment of defendant in error.

The judgment of the circuit court is reversed. and the award is set aside.

*Judgment reversed and award set aside.*

DUNN, DUNCAN and THOMPSON, JJ., dissenting.