(No. 2766—

JAMES FISH, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 9, 1937.*

PETER V. FAZIO, for claimant.

OTTO KERNER, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

For some time prior to December 28th, 1934 the claimant was in the employ of the respondent as a truck driver in the

Division of Highways. On the last mentioned date, while driving his truck over an icy road, the truck swerved and crashed into a bridge, and claimant's right knee struck the hand throttle, whereby he sustained a fracture of the patella. He was removed to the hospital, and received the necessary medical, surgical and hospital care and attention at the expense of the respondent.

On May 15th, 1935 claimant returned to work for the respondent as a laborer. He was paid compensation for his temporary total disability from the date of the injury, to-wit, December 28th, 1934, to the date he returned to work, to-wit, May 15th, 1935. All medical, surgical and hospital bills incurred on account of the injury, amounting to the sum of $968.50, were also paid by the respondent.

Claimant contends that as the result of said injury he has sustained a partial permanent disability, as well as a permanent partial loss of the use of the right leg, and asks for compensation for such partial permanent disability under Section 8-D of the Compensation Act, or, in the alternative, for the specific loss under Section 8-E of such Act.

Claimant returned to work for the respondent as a laborer on May 15th, 1935, and claims to have sustained another injury on July 11th, 1935. The evidence as to an accidental injury arising out of the claimant's employment on the last mentioned date is not at all convincing. No one testified with reference to the conditions existing at the time of the accident, except the claimant. He stated that he commenced work at 8:00 A. M., and went out on a truck with a driver by the name of Quinn, to patrol a section of the highway and see if everything was all right; that there was a washout at a certain point on the highway, and they drove to another point for the purpose of obtaining some pieces of concrete to fill such washout; that at about 9:30 the truck stopped and he got out. After that he remembers nothing as to what happened to him. The driver of the truck was not called as a witness, and his absence is not accounted for.

Claimant was taken to a doctor by the truck driver, and was later taken to Oak Park Hospital, and afterwards to Mother Cabrini Hospital in Chicago. He was examined the same day by Dr. Carmen Joseph Pintozzi who found him apparently unconscious, and who made a tentative diagnosis of heat exhaustion. Apparently he was treated for that condi-

tion, but there is nothing in the record to indicate whether the subsequent developments confirmed the tentative diagnosis. Several spinal punctures were performed and a microscopic examination was made. Claimant continued under the treatment of Dr. Pintozzi until July 29th, 1935 when he was discharged. The doctor testified "I believe a man should follow a sedentary life for some period immediately after this condition;" also that it would be approximately two months after his discharge before claimant would be in proper condition to follow any type of real work, in order to avoid a recurrence, but that within a period of thirty or forty days after his discharge, he should be able to perform the character of work he was performing at the time of the hearing herein. At the time of the hearing claimant was employed by the Sunkist Pie Company, mixing whipped cream, the duties of which employment did not require any heavy work.

As to the accident and injury of December 28th, 1934, it appears that the claimant has been paid compensation for his temporary total disability, and that all medical, surgical and hospital bills have been paid by respondent. The only question remaining for consideration as to such accident, is whether claimant is entitled to compensation for permanent partial disability or for specific loss of the use of the right leg, or both.

Section 8-E of the Compensation Act provides in part as follows:

"For injuries in the following schedule, the employee shall receive compensation for the period of temporary total incapacity for work resulting from such injury, in accordance with the provisions of paragraphs (a) and (b) of this section, for a period not to exceed sixty-four weeks, and shall receive in addition thereto compensation for a further period subject to limitations as to amounts as in this section provided, for the specific loss herein mentioned, as follows, but shall not receive any compensation for such injuries under any other provision of this Act."

Among the specific disabilities therein mentioned are the following, to-wit:

"15. For the loss of a leg, or the permanent and complete loss of its use, fifty percentum of the average weekly wage during one hundred and ninety weeks."

"17. For the permanent partial loss of use of a member * * * fifty percentum of the average weekly wage during that proportion of the number of weeks in the foregoing schedule provided for the loss of such member * * * which the partial loss of use thereof bears to the total loss of use of such member * * *."

From the foregoing provisions of the Compensation Act, it appears that where the claimant is entitled to compensation for injuries resulting in any of the specific losses mentioned in Section 8-E, he is not entitled to compensation for such injuries under any other provisions of the Act. Consequently the claimant is entitled to compensation for such permanent partial loss of the use of his right leg as is shown by the evidence, but is not entitled to compensation for any other partial permanent disability.

The evidence discloses that there is a limitation of flexion of the right knee of from thirty to forty-five per cent, but no limitation of extension. In our judgment such limitation of flexion, together with a certain amount of crepitation, as shown by the evidence, constitutes the permanent loss of ten per cent of the use of claimant's right leg.

As to the injury of July 11th, 1935, there is no evidence in the record which justifies an award. It is encumbent upon the claimant to prove not only that he sustained an accidental injury which arose in the course of his employment, but also that such injury arose out of the employment. The evidence in the record shows merely that the claimant was riding in an automobile truck in the course of his duties, from 8:00 to 9:30 A. M.; that the truck stopped and he stepped out of it; that he remembers nothing thereafter with reference to his injury; that he was taken to a doctor, later to a hospital; that he apparently was unconscious when he was examined by the doctor who diagnosed his case as heat exhaustion. There is nothing in the evidence to indicate whether the doctor's diagnosis was thereafter confirmed. The driver of the truck, who was with the claimant at the time of the accident, did not testify, and his absence is not explained. There is no evidence in the record as to the temperature or weather conditions at the time and place of the accident.

The question as to whether heat prostration constitutes an accidental injury arising out of the employee's employment, was considered by our Supreme Court in the case of *City of Joliet* vs. *Ind. Com.,* 291 Ill. 556. In that case the court held that under the facts there in evidence, the employee sustained an accidental injury which arose out of and in the course of his employment. In considering the question the court, on page 558, said:

"The heatstroke occurred in the course of the employment, and there was evidence from which the commission might reasonably conclude that it arose out of the employment. The man was overcome by the heat. In his employment, and because of it, he was exposed to a degree of heat beyond the ordinary temperature of the day."

The case of *Consumers Co.* vs. *Ind. Com.*, 324 Ill. 152, involved the question as to whether injuries resulting from frost bite constituted accidental injuries arising out of the employment. The injuries in that case resulted from weather conditions which were the direct opposite of those in the City of Joliet case; but the legal principles involved are the same in each case. In its consideration of such principles, the Supreme Court, on page 155, said:

"The question in dispute is whether the injuries suffered by defendant in error arose out of his employment. Injuries resulting from exposure to weather conditions, such as heat, cold, ice, snow or lightning, are generally classed as risks to which the general public is exposed and not within the purview of Workmen's Compensation Acts, although the injured person, at the time he received his injury, may have been performing duties incident to and in the course of his employment. The rule is generally recognized, however, that if an employee, because of his duties, is exposed to a special or peculiar danger from the elements,—a danger that is greater than that to which other persons in the community are subjected,—and an unexpected injury is sustained by reason of the elements, the injury constitutes an accident arising out of and in the course of the employment within the meaning of Workmen's Compensation Acts. If the character of the employment is such as to intensify the risks that arise from extraordinary natural causes, an accident under such circumstances is one arising out of the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. If the accident, under the circumstances of the employment, was merely a consequence of the severity of the elements, to which persons in the locality, whether so employed or not, were equally exposed, it is not compensable."

It is not every case of heat exhaustion or prostration that constitutes an accidental injury arising out of the employment. If the employee is subjected only to such conditions as other people in the same community, it cannot be said that the injury arose out of the employment, as in such case, the conditions causing the injury cannot be said to originate in such employment.

The evidence in the record furnishes no basis for a finding that the injury sustained by the claimant arose out of his employment, and consequently we have no authority to allow an award for the injuries sustained on July 11th, 1935.

Claimant's average weekly wage was $33.00, and he had two children under the age of sixteen years at the time of the accident. He is therefore entitled to compensation at the rate of $16.00 per week for the period of nineteen weeks for the permanent loss of ten per cent of the use of his right leg, to-wit, the sum of Three Hundred Four Dollars ($304.00), all of which has accrued at this time.

Award is therefore entered in favor of the claimant for the sum of Three Hundred Four Dollars ($304.00).

This award being made under the provisions of the Workmen's Compensation Act for injuries to a State employee, is subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Claims Arising Out of Injuries to State Employees, and Providing for the Method of Payment Thereof," approved July 3d, 1937 (Session Laws of 1937, p. 83).

In accordance with the provisions of such Act, this award is subject to the approval of the Governor, and upon such approval, is payable from the appropriation from the Road Fund in the manner provided in such Act.