(No. 30482.—

STEPHEN CEISEL, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN DREXLER, Defendant in Error.)

*Opinion filed September 24, 1948.*

ANGERSTEIN & ANGERSTEIN, (ARMAND CHIAPPORI, BERNARD F. MARTIN, and THOMAS K. GIFFORD, of counsel,) all of Chicago, for plaintiff in error. .

ROBERT J. WEISS, (GEORGE C. RABENS, of counsel,) both of Chicago, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:.

John Drexler filed with the Industrial Commission an application for adjustment of claim against Stephen Ceisel alleging that he sustained an accidental injury on January 18, 1945, arising out of and in the course of his employment by Ceisel as a foreman of bricklayers. It is alleged in his application that he spent the entire day inspecting outside work and that his foot was frozen, developing into trench foot. The arbitrator awarded compensation in accordance with section 8 of the Workmen's Compensation Act. The Industrial Commission without additional evidence sustained the award, which was confirmed by the superior court of Cook County on *certiorari*. The petition for writ of error being granted, the cause is now before us for decision.

The parties stipulated that on January 18, 1945, the relationship of employee and employer existed between them and that they were both operating under and subject to the Workmen's Compensation Act. There was no conflict in the evidence. Only two witnesses testified, Drexler and a doctor called in his behalf. No evidence was offered by the employer.

The record discloses that defendant in error, Drexler, was, and had been for 12 or 13 years prior to the date of the alleged injury, in the employment of Ceisel, a mason

contractor. He was 48 years of age and had never had any trouble with his feet. On January 18, 1945, he was supervising for his employer some masonry work being done for the Admiral Radio Corporation in Chicago, and had about 28 men, bricklayers, masons, laborers and helpers working under him. The work consisted of some alterations in the first floor of the radio corporation's building and the addition of a second or top floor. The materials for the work were on the outside of the building and had to be carried inside for use by the bricklayers and masons. They were taken to the second floor by an outside hoist. The men were required to use an outside stairway and were not allowed to enter that part of the building which was in use by the radio corporation. Drexler did no carrying and no bricklaying or masonry work, but his duties were to lay out and manage the work and supervise the men. He did not have to be in any one spot any particular length of time, and his duties in supervising the men took him both outside and inside the building.

On the second floor where the men were working there were lighted salamanders, throwing out heat. Defendant in error testified he did not know how many times he stopped at the salamanders to warm and did not know how many of the eight hours he worked on January 18 were spent on the outside and how many on the inside, but that he had the opportunity and was not prohibited from warming as many times and as much as he desired. He was wearing warm woolen socks, regular work shoes and overshoes, long woolen underwear, trousers, and overalls on top of the trousers, and also had on a sheepskin jacket and a regular jacket on top of that.

He reported for work on the day in question at 7:30 o'clock in the morning and worked until 4:30 in the afternoon, which was the regular quitting time. On that day the temperature, during the period of time from 7:30 o'clock A.M. to 4:30 o'clock P.M. ranged from 26 to 36

degrees Fahrenheit at the Chicago Municipal Airport. The United States Government records of the Weather Bureau, which were introduced in evidence, showed that while at 7:30 A.M. and 8:30 A.M., the temperature stood at 26 degrees, by 9:30 A.M. it had risen to 28 degrees; by 10:30 A.M. to 30 degrees; by 12:30 P.M. to 31 degrees; by 1:30 P.M. to 36 degrees, where it remained until 3:30 P.M.; and that at quitting time, 4:30 P.M., it was 34 degrees.

Defendant in error noticed nothing unusual about himself on that day until just before quitting time when he felt a pain in his foot. He worked all day Friday and Saturday, January 19 and 20, and on both days, while his foot gave him no trouble in the morning, the toes started aching in the afternoon. On Monday morning, the 22nd, he came to work as usual at 7:30. The pain started about 9 o'clock, but he continued working until 10, when it became so severe that he had to leave the job and go to a doctor. He called up his employer from the doctor's office and told him that he had got sick and that the doctor reported he had frozen toes. This doctor, Dr. Kaiserman, treated him until April 13, 1945. On that date he was examined by Dr. Hans W. Staple, who treated him until July 13, 1945, when the first and fourth toes on his right foot were amputated by Dr. de Takats. Defendant in error has never returned to work since leaving the job on January 22, 1945.

Dr. Staple testified that he first saw and examined defendant in error on April 13, 1945; that he noticed there had been a little blister on the first toe of his left foot, which had opened and showed the signs of a beginning necrosis, that his fourth toe showed signs of a rather progressed necrosis and the fifth toe was red and showed the signs of a beginning necrosis; that he first considered it only a frostbite, but as the case progressed he diagnosed it as Buerger's disease; that Buerger's disease is a slow

disintegration of the small vessels of the ends of the extremities; that he was sure defendant in error was afflicted with this disease on January 18, 1945, and, in his opinion, had been so afflicted for a number of years; that extreme cold is one of the principal precipitating causes for necrosis in persons who are afflicted with Buerger's disease and that if a person with Buerger's disease has his extremities exposed to extreme cold, the necrosis can easily set in. He further testified that he treated defendant in error from April 13, 1945, until the following July, and that his condition at first improved, but later, when the necrosis did not heal and his pain again increased he advised him to see Dr. de Takats; that on July 13, 1945, Dr. de Takats amputated defendant in error's first and fourth toes. Dr. Staple also testified that the progress of Buerger's disease depends on the individual, it may get worse or it may stop, it is different in every case; that if there is difficulty it usually is intermittent limping and ulcerations; that if a person does not have this limp from the disease, he may get ulcers or may just get a pallor or a redness of the toes; that anything is possible as a consequence of an occlusion of the providing vessels in the foot.

The question in this case for determination is whether under the law it has been shown that defendant in error suffered an accidental injury arising out of and in the course of his employment.

To entitle a workman to an award of compensation his injuries must result from an accident both arising out of and in the course of his employment. The two elements must coexist. (*Scholl* v. *Industrial Com.* 366 Ill. 588.) Neither, alone, is enough. They must be concurrent and simultaneous. The one without the other will not sustain an award. (*Math Igler's Casino, Inc.* v. *Industrial Com.* 394 Ill. 330.) It is not easy, nor is it necessary to the determination of the present case, to give a comprehensive definition of the words "arising out of and in the course of

the employment" which accurately includes all cases embraced within the act and with precision excludes those outside its terms. An injury is received in the course of the employment when it comes while the workman is doing the duty which he is employed to perform. The words "in the course of the employment" relate to the time, place and circumstances under which the accident takes place. (*Illinois Country Club, Inc.* v. *Industrial Com.* 387 Ill. 484; *Scott* v. *Industrial Com.* 374 Ill. 225.) An accident arises in the course of the employment when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. *Great Atlantic and Pacific Tea Co.* v. *Industrial Com.* 347 Ill. 596.

The term "arising out of the employment" as used in the act points to the origin or cause of the accident. (*Klug* v. *Industrial Com.* 381 Ill. 608.) It presupposes a causal connection between the employment and the accidental injury. This court has in a number of cases announced the rule to be that an injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident to the work and as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment. But the rule excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not

have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence. (*Permanent Construction Co.* v. *Industrial Com.* 380 Ill. 47; *Scholl* v. *Industrial Com.* 366 Ill. 588; *Mazursky* v. *Industrial Com.* 364 Ill. 445.) The difficulty attending the determination of whether an injury arises out of the employment is not in formulating the rule, but in applying it.

The action of the elements in causing death or injury does not, under ordinary circumstances, justify an award of compensation. (*Great American Indemnity Co.* v. *Industrial Com.* 367 Ill. 241.) Injuries resulting from exposure to weather conditions are generally deemed risks to which the general public is exposed and not within the contemplation of workmen's compensation acts, although the injured person, at the time he suffered his injury, may have been performing duties incident to and in the course of his employment. (*Illinois Country Club, Inc.* v. *Industrial Com.* 387 Ill. 484; *Consumers Co.* v. *Industrial Com.* 324 Ill. 152.) It is held generally in this country that in order that an injury may be said to arise out of the employment the risk of being injured by the elements must be one incidental to the employment and not common to the public. (*Central Illinois Public Service Co.* v. *Industrial Com.* 391 Ill. 256.) Climatic conditions are not peculiar to any industry or vocation so as to be said to arise out of such employment. The reasonable rule, however, and the one which has been adopted by this court is that if the employee, because of his duties, was exposed to a special or peculiar danger from the elements, namely, a danger greater than that to which other persons in the community were subjected, and an unexpected injury was sustained by reason of the elements, or if the employment intensified the risks arising from the natural hazards of the elements, which increased hazard contributed to the injury,

then the injury constitutes an accident arising out of, as well as in the course of his employment. (*Illinois Country Club, Inc.* v. *Industrial Com.* 387 Ill. 484; *National Ice and Fuel Co.* v. *Industrial Com.* 387 Ill. 31; *Consumers Co.* v. *Industrial Com.* 324 Ill. 152; *Central Illinois Public Service Co.* v. *Industrial Com.* 291 Ill. 256.) What the law intends is to protect the employee against the risks and hazards taken in order to perform the master's task; and if no such risk or hazard caused or contributed to cause the injury, then the employee is not entitled to compensation.

Where an employee has been injured by freezing or frostbite, his right to compensation has been held to depend upon the question whether his employment required exposure which, because of the nature of his work, the place of his employment, or his lack of opportunity for warming himself from time to time by artificial heat, was greater or more constant than the exposure to which others in the neighborhood not similarly employed were subjected. *National Ice and Fuel Co.* v. *Industrial Com.* 387 Ill. 31; *Consumers Co.* v. *Industrial Com.* 324 Ill. 152.

The two cases last cited are the only cases where this court has had occasion to pass upon a claim of an employee for injuries resulting from frostbite. In the *Consumers Company* case an employee's hands were frozen while he was shoveling coal in a coal yard which was practically enclosed by high walls and buildings and contained a heated shanty in which employees could warm themselves. This court denied compensation on the ground that the conditions under which the employee was required to work were not such as to expose him to a special or peculiar danger from freezing greater than that shared by others in the same locality who were not so employed. In the *National Ice and Fuel Company* case an employee while shoveling coal into the basement of a building sustained injuries from frostbite of the fingers of the left hand. He shoveled

the coal left-handed, and it appeared that in scooping left-handed, his left hand was kept for the most part upon and in contact with the steel brace on the handle of the shovel. An award of compensation was sustained by reason of the fact that the employee's hand coming in contact with the cold steel intensified the cold applied to his left hand and thereby increased and intensified the risk of frostbite. This court distinguished the *Consumers Company case* from the *National Ice and Fuel Company case* because of the contact of the employee's hand with the steel handle of the shovel, and because in the latter case there was no evidence that the employee had access to any heated place where he might have warmed himself during the time he was engaged in shoveling the coal into the basement.

Defendant in error agrees that being frostbitten does not constitute an accidental injury arising out of and in the course of the employment where there is no special or greater risk to the employee arising out of the employment relationship than the risk to others of the general public in the same vicinity who are not so employed; but he contends that his peculiar physical condition in being afflicted with Buerger's disease constitutes such special or greater risk. It is his contention that the freezing of his feet on January 18, 1945, notwithstanding the relatively mild condition of the weather on that date, the substantial clothing he wore, and his opportunity for warming himself at the salamanders, establishes conclusively that he was, while thus engaged in his employment, exposed to a special risk or danger from the elements to which the ordinary person was not subject, and that his injury therefore arose out of and in the course of his employment.

The cases of *Jones Foundry and Machine Co.* v. *Industrial Com.* 303 Ill. 410, and *Baggot Co.* v. *Industrial Com.* 290 Ill. 530, are cited in support of defendant in error's contention that his physical condition in being afflicted with Buerger's disease constituted an additional hazard or

an increased risk to which a normal person would not be subjected, and therefore the injury resulting in his disability arose out of and in the course of his employment. In the *Jones Foundry and Machine Company case* a laborer afflicted with arteriosclerosis, while performing his usual task, in his usual way, suffered a cerebral hemorrhage by reason of his exertion in the heated molding room where he was at work. This was held to be an accidental injury arising out of and in the course of his employment, although his existing disease predisposed him to an accident of this character. There was evidence that his exertion in the heat of the molding room was the cause of the hemorrhage and the disability resulting therefrom. In the *Baggot Company case* the employee died from a hemorrhage sustained in the ordinary course of his employment while turning a windlass by which heavy loads of pipe were being hoisted to the sixth floor of a building under construction. A post-mortem examination disclosed a large longitudinal tear and several smaller transverse tears in the walls of the aorta. Compensation was awarded and the award sustained, this court holding that the circumstances were clearly such that the commission was justified in finding that the hemorrhage was caused by the employee's physical exertion.

It is readily apparent in both of the foregoing cases that the exertion put forth by the employee in the performance of his work was a contributing proximate cause of the injury, and therefore such injury arose out of the employment, regardless of what predisposing physical condition of the employee existed. However, the record in the present case discloses an entirely different situation. There is nothing in the record here to show that the work which the defendant in error was required to perform or the conditions under which he was required to work were such as to expose him to the danger of frostbite, or to show that the frostbite which he suffered was proximately caused, in whole or in part, by the performance of his duties or

the conditions under which he was required to work. The Workmen's Compensation Act does not make the employer an insurer of the safety of his employees while engaged in his service. The natural hazards to which all persons are subjected by exposure to weather conditions were not increased in the case of defendant in error by reason of his employment, or the place at which or the conditions under which he was required to work, but such natural hazards were increased solely by reason of his physical condition. Under such circumstances it cannot be said that the disability for which he was awarded compensation resulted from an accidental injury arising out of his employment.

We have held in many cases that in order to bring a case within the rule allowing compensation for the acceleration or aggravation of a pre-existing disease, there must be an accidental injury arising out of and in the course of the employment. (*Fittro* v. *Industrial Com.* 377 Ill. 532; *Chicago and Northwestern Railway Co.* v. *Industrial Com.* 341 Ill. 131; *Philadelphia and Reading Coal and Iron Co.* v. *Industrial Com.* 334 Ill. 58.) And, as held by this court in the case of *Consumers Co.* v. *Industrial Com.* 324 Ill. 152, frostbite suffered in the course of the employment is not such accidental injury where the employee had access to a heated place where he might go and warm himself if he desired. Under such circumstances, even an employee suffering from a disease making him more susceptible to frostbite cannot reasonably be said to be exposed to a special or peculiar danger from freezing greater than that shared by other persons in the same locality not so employed.

We are further of the opinion the record in this case shows no causal connection between defendant in error's employment and his alleged accident. The only evidence on this point is Dr. Staple's testimony that exposure to extreme cold is one of the principal precipitating causes of necrosis in persons afflicted with Buerger's disease, and that if a person with Buerger's disease had his extremities

exposed to extreme cold, the necrosis can set in. This testimony, when considered in connection with the fact that the frostbite from which the necrosis resulted occurred on a mild winter day and at a place where defendant in error had unrestricted opportunity to warm at the heated salamanders, and with his own statement, "That particular day I got sick it wasn't very cold at all," falls far short of establishing that defendant in error's disability was caused by an accidental injury arising out of his employment.

It is urged by defendant in error that while only a preponderance of the evidence is required to support the application for compensation, and while all reasonable inferences to support his claim may be drawn from the evidence, the testimony in this case requires no such liberal application to support the award of the commission; that a decision of fact by the Industrial Commission will not be disturbed unless contrary to the manifest weight of the evidence.

It is well settled that the Industrial Commission may act on reasonable inferences arising from undisputed or established facts, and this court may not discard such reasonable inferences because perchance it might have drawn other inferences from such established facts. (*Rosenfield* v. *Industrial Com.* 374 Ill. 176.) While in compensation cases the courts review all questions of law and fact presented by the record, yet it is only where the decision of the Industrial Commission is without substantial foundation in the evidence or its finding is manifestly against the weight of the evidence that such decision is set aside. (*Olympic Commissary Co.* v. *Industrial Com.* 371 Ill. 164.) If the undisputed facts upon any issue permit more than one reasonable inference to be drawn therefrom, the determination of such issue presents a question of fact, and the conclusion of the commission in deciding the question will not be disturbed on review; but if the undisputed facts are susceptible of but a single inference, the question is one

of law. (*Lawrence* v. *Industrial Com.* 391 Ill. 80.) If it is clear upon the facts that as a legal conclusion an injury was not accidental or that it did not arise in the course of the employment, a contrary conclusion awarding compensation will not be allowed to stand. (*Eugene Dietzen Co.* v. *Industrial Board*, 279 Ill. 11.) No reasonable inference can be drawn from the facts in this case which affords any basis in law for the commission's conclusion, and the superior court erred in allowing that conclusion to stand.

For the reasons above set forth, the judgment of the superior court of Cook County is reversed and the award set aside.

*Judgment reversed; award set aside.*