414

Helen Olson Anderson, Administrator de bonis non of Estate of Arlie Julius Olson, Deceased, Appellee, v. Wesley Meyer, Appellant.

Gen. No. 10,284.

Opinion filed August 10, 1949.
Rehearing denied October 5, 1949. Released for publication October 7, 1949.

THOMAS J. WELCH and R. SHERIDAN WELCH, both of Kewanee, for appellant; VERA M. BINKS, of Kewanee, of counsel.

REYNOLDS M. EVERETT and SOLLO, GRAHAM & CALIFF, all of Moline, for appellee; ROBERT G. GRAHAM, of Moline, of counsel.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

This suit was brought in the circuit court of Henry county by the administratrix of the estate of Arlie Julius Olson, deceased, against Wesley Meyer and Carl Ropp to recover damages under the Injuries Act for negligently causing the death of the plaintiff's intestate. The decedent was fatally injured on April 10, 1945, as a result of a collision between a truck he was driving and a truck being operated by Wesley Meyer on State Highway No. 82 about four miles north of the City of Geneseo.

At the time of the accident the plaintiff's intestate was an employee of Rollin Nelson driving a truck be-

longing to him. Wesley Meyer was an employee of Carl Ropp as a truck driver and operating a truck belonging to Ropp.

The complaint is based on the alleged improper operation of the truck which was under the control of Meyer. Count one of the complaint charges general negligence of the defendant, Meyer. Count two charges Meyer with wilful and wanton conduct. Count three charges the defendant, Ropp, with general negligence in the operation of his truck by his servant and agent, Wesley Meyer. The fourth count charges Ropp with wilful and wanton conduct through his servant and agent, Wesley Meyer, in the operation of Ropp's truck. There are no facts stated in the complaint from which it appears that the parties and Rollin Nelson were bound by the provisions of the Workmen's Compensation Act, either prima facie or otherwise.

The defendants made a motion to strike the complaint because it does not state a cause of action. This point is not argued in this court. (*Vide, Mueller v. Elm Park Hotel Co.*, 391 Ill. 391, 397.)

The motion to strike being overruled, the defendants filed an answer denying the charges of the complaint. There was a trial before a jury. At the close of the plaintiff's evidence the defendant, Meyer, filed a motion for a directed verdict on the first count and a like motion on the second count. Similar motions were made by the defendant, Ropp, on his behalf. Rulings on the motions were reserved by the trial judge until the close of all the evidence. At the close of all the evidence, motions as before made for a directed verdict were presented to the court and overruled.

The defendant then made a motion, "to dismiss the case for the following reason. That the record now shows that the remedy of the next of kin, if any, is under the provisions of the Workmen's Compensation Act of the State of Illinois and not under 'An Act Requiring Compensation for causing Death by Wrongful

Act, Neglect or Default' approved February 12th, 1853, as amended.''

After argument by counsel the foregoing motion was overruled by the court. The defendants based this motion on certain provisions of sec. 29 of the Workmen's Compensation Act [Ill. Rev. Stat. 1947, ch. 48, par. 166; Jones Ill. Stats. Ann. 143.44] which will be hereinafter stated. It is evident that arguments in the trial court, under the motion and testimony of Meyer at the trial, tending to prove that Meyer had departed from his employment prior to the accident, lead the plaintiff to make the motions hereafter mentioned in favor of Ropp, the employer of Meyer.

There was a verdict for $6,000 against the defendants, Meyer and Ropp. Thereafter the plaintiff made two motions filed on the same day. The first motion ask for judgment in favor of Ropp notwithstanding the verdict, on the ground that there was no evidence that Meyer was acting as the agent of, or in the course of his employment for Ropp at the time of the accident. The other motion was for a new trial against Ropp on the ground that the verdict is contrary to the weight of the evidence in that there was not sufficient evidence that Meyer was the agent of Ropp, or engaged in the course of his employment for Ropp at the time of the accident. The motions were taken under advisement by the trial judge.

Judgment was entered against the defendant, Wesley Meyer, in the amount of $6,000 and costs of suit. Subsequently, the trial judge, being of the opinion that the motion for a judgment in favor of Ropp notwithstanding the verdict and the motion for a new trial, as to Ropp being in the alternative, allowed the motion made by the plaintiff in favor of Ropp for a judgment notwithstanding the verdict and rendered

judgment in favor of Ropp. The defendant, Meyer, has appealed from the judgment against him.

It is first contended by the defendant that the trial court erred in not dismissing the case at the close of all the evidence as the remedy of the plaintiff, if any, for compensation against his employer, was under the Workmen's Compensation Act. In support of his contention the defendant cites a part of sec. 29 of the Act as follows:—"Where an injury or death for which compensation is payable by the employer under this act, was not proximately caused by the negligence of the employer or his employees, and was caused under circumstances creating a legal liability for damages in some other person other than the employer to pay damages, such other person having also elected to be bound by this act, or being bound thereby under Section 3 of this act, then the right of the employee or personal representative to recover against such other person shall be transferred to his employer and such employer may bring legal proceedings against such other person to recover damages sustained, in an amount not exceeding the aggregate amount of compensation payable under this act, by reason of the injury or death of such employee."

Construing sec. 29 of the Act the Supreme Court in the case of *O'Brien v. Chicago City Ry. Co.*, 305 Ill. 244, has held, "that the common law right of action of any employee against any other person than his employer for negligently injuring him in the course of his employment where such other person is bound by the provisions of the Workmen's Compensation Act is abolished."

The defendant bases his foregoing contention on the ground that the evidence in the case shows that Rollin Nelson, the employer of plaintiff's intestate, also plaintiff's intestate, and Carl Ropp, the employer of Meyer,

and the defendant, Meyer, were all bound by the Workmen's Compensation Act; that any legal liability of Meyer for damages to the plaintiff's intestate resulting from any negligence of Meyer was transferred to the employer of the plaintiff's intestate.

It appears from the evidence that the two employers, Nelson and Ropp, were each engaged in the business of "carriage by land" under paragraph 3 of the Workmen's Compensation Act [Ill. Rev. Stat. 1947, ch. 48, par. 139, subpar. 3; Jones Ill. Stats. Ann. 143.18, subpar. 3], and it is conceded by the plaintiff that the said employers and their employees were automatically bound by the provisions and terms of the Act. The employment of Meyer as a truck driver engaged in the extra-hazardous employment of carriage by land created a risk under his employment which imposed on him a greater danger than upon other persons using the public highways. (*Mueller Const. Co. v. Industrial Board,* 283 Ill. 148.)

The arguments of counsel on the first contention of the defendant, are limited and centered on the question whether the defendant, Meyer, at the time of the accident, was acting, "in the course of his employment," and under the circumstances there existing, whether he and his employer were bound by the Workmen's Compensation Act. As will hereafter appear, the evidence on the question whether Meyer had departed from his employment, at the time of the collision, is not disputed and the problem presented for determination is one of law. (*Farley v. Industrial Commission,* 378 Ill. 234; *Chicago & West Towns Rys., Inc. v. Industrial Commission,* 381 Ill. 257.)

In the case of *Mueller v. Elm Park Hotel Co.,* 391 Ill. 391, on page 396, it is stated that the case of *Stevens v. Illinois Cent. R. Co.,* 306 Ill. 370 announces: "The rule that where it appears from the complaint or the evidence that the plaintiff was employed in an extra-hazardous occupation which is automatically under the

act, and also that the defendant was engaged in an extra-hazardous occupation, which would prima facie make it automatically subject to the provisions of the act, the burden is on the plaintiff to show either that the defendant causing the injury was not under the act or that the injury did not arise out of and in the course of the employment of the plaintiff. In the *Stevens* case, it appeared from both the pleadings and the evidence that the plaintiff, at the time of his injury, was employed in a business covered by the act, and that the defendant was engaged in a business which would prima facie automatically subject it to the provisions of the act, unless it was engaged in interstate commerce at the time complained of. In this situation it was necessary for the plaintiff to show either that the defendant was not at that particular time bound by the provisions of the act, or that the injury did not arise out of and in the course of his employment."

We have for determination here whether or not the accident was caused by the alleged negligence of Meyer while acting, "In the course of his employment." (*Rehula v. Bessert*, 322 Ill. App. 146; *Walsh v. Central Cold Storage Co.*, 324 Ill. App. 402; *Kenney v. Mozin*, 323 Ill. App. 20.) In the case of *Klug v. Industrial Commission*, 381 Ill. 608, the defendant in error obtained a judgment in the circuit court of Kane county allowing her an award under the Workmen's Compensation Act. Her employer appealed to the Supreme Court. The Supreme Court in that case states:—"The only question presented for decision is whether or not the injury arose out of and in the course of her employment. It was incumbent on defendant in error to prove that her injury arose out of and in the course of her employment. These words have often been used and construed by this court and it is now well established that the words 'out of' point to the origin of the cause of the accident, and the words 'in the course of' point to the time, place and circumstances

under which the accident occurred. The words are used together and there can be no recovery in this case unless the injury occurred in the course of the employment and also arose out of the employment. The accident must result from a risk incidental to the employment and while the employee is doing that which he is reasonably required to do within the time of his employment and at the place where he may reasonably expect to be while discharging the duties of his employment. (Citing cases.)

"In order for an accident to arise out of the employment it must be incidental to the performance of the contract of service, and the origin or cause of the accident must belong to and be connected with the contract of service. (*Swartz v. Industrial Com.* 379 Ill. 139; *Rainford v. Industrial Com.* 289 id. 427.) The Workmen's Compensation Act does not apply to every accidental injury which may happen to an employee during his employment. It does not make the employer an insurer against all injury. The injury contemplated by the act must have its origin in some risk of the employment. (Citing cases.) The employer is liable for compensation only for an injury which occurs to the employee while performing some act for the employer in the course of his employment, or incidental to it. (Citing cases.) A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. (*Boorde v. Industrial Com.* 310 Ill. 62.) A prerequisite to the right of compensation is that the accidental injury must arise out of, as well as occur in the course of, the employment, and the mere fact that the duties take the employee to the place of the injury and that, but for the employment, he would not have been there, is not, of itself, sufficient to give rise to the right to compensation. There must be some causal relation between the employment and the injury, and the causive danger must be peculiar to the work

and not common to the neighborhood. *Great American Indemnity Co. v. Industrial Com.* 367 Ill. 241." *Danville, U. & C. Ry. Co. v. Industrial Commission,* 307 Ill. 142; *Edelweiss Gardens v. Industrial Commission,* 290 Ill. 459; *Vulcan Detinning Co. v. Industrial Commission,* 295 Ill. 141; *West Side Coal & Mining Co. v. Industrial Commission,* 291 Ill. 301; *Kensington Steel Corp. v. Industrial Commission,* 385 Ill. 504, and *Antoszkiewicz v. Industrial Commission,* 382 Ill. 149.

It appears from the record that the defendant, Meyer, was on the day of the accident in the employ of Carl Ropp as a truck driver and farm hand and was hauling shelled corn on State Highway No. 82 in a grain truck belonging to Ropp from the Hanna farm, located north of Geneseo, to the elevator in Geneseo. Meyer had finished unloading his last load of corn at the elevator for that day. He was, shortly before the accident, driving the truck northward on State Highway No. 82 to leave the empty truck at a place where it was kept by his employer which was in the neighborhood of the Hanna farm. About four miles north of Geneseo there is an unpaved road running east and west which with the state highway forms an intersection known in the vicinity there as Wolf's corner. As Meyer drove the grain truck toward Wolf's corner, the plaintiff's intestate was driving his employer's cattle truck northward on the state highway in the rear of the grain truck. At that time both trucks were being driven on the east side of the highway. "Meyer testified that when he was about 250 feet south of Wolf's corner he decided to turn west into the unpaved road and pick up his mail at the home of Alva Brown, who lived in a westerly direction from the state highway. When I started to turn west at Wolf's corner, I was going to Alva Brown's place. It was while making that turn that the accident happened. I was going to Alva Brown's to pick up my mail. I was going down there entirely on a personal errand for myself. I kept

on my right side of the highway while driving toward Wolf's corner. I started to make a turn about ten feet before I hit the center of the intersection. As I started to make my turn, I got the front wheels about half way into the middle of the left-hand lane, the front end of the cattle truck came over and hit the front end of mine.''

Carl Ropp, Meyer's employer, testified, in part as follows: ''Meyer was driving my truck. When he finished his day's work, he takes the truck to my place. My place is ten miles north of Geneseo. In taking the truck to my place, he had no occasion to turn west at Wolf's corner. In going back to the Hanna Estate where he was hauling corn, he would have no occasion to turn there at that corner.''

In the case of *Public Service Co. of Northern Illinois v. Industrial Commission*, 395 Ill. 238, the Supreme Court states: ''We have repeatedly held that an employee injured or killed under circumstances showing he substantially deviated from the course of his duty is not compensable. In *Central Garage v. Industrial Com.* 286 Ill. 291, an employee was directed to take a passenger to a certain destination designated by his employer to meet a train, and, finding there was some time to wait, the employee suggested to the passenger that they take an additional ride. While doing so the employee was killed. We held that the death did not arise out of and in the course of the employment and the award for compensation was set aside.''

''In *Everett Hat Co. v. Industrial Com.* 305 Ill. 564, an elevator operator running an elevator near a public alley saw a board lying in the alley, and leaving his position in the elevator to get the board was struck by a truck passing through the alley. We held that in going into the alley and getting the board for his personal use he was not engaged in employment, and an award allowing compensation was set aside. In *Board of Education v. Industrial Com.* 321 Ill. 23, on this subject

we said: The law is settled that an employee is not in the course of his employment, even though he may be in the general area of it, if he is not engaged in the particular duties for which he was employed or in any work incidental to his employment.''

In the case of *Hill v. Department of Labor & Industries,* 173 Wash. 575, 24 P. (2d) 95, the Supreme Court of Washington decided that a street car operator injured when struck by an automobile while returning to his car, which he had left to mail a letter, was not injured in the course of his employment. The Supreme Court of Washington in that case says: ''This case is clearly to be distinguished from cases in which a person within the protection of the act temporarily leaves the place of his employment for the purpose of performing some act of necessity or convenience, such as procuring water or food. Such actions are necessary to the proper performance of the work, and in many cases constitute no interruption of the course of the employment. Ordinarily, the mailing of a letter is an act clearly without the course of the employment, and the record before us contains nothing which indicates that circumstances existed which take this case without the general rule.

''Our conclusion that respondent, at the time he was injured was not within the course of his employment within the meaning of the statute is supported by the following decisions of other courts: *Dreyfus & Co. v. Meade,* 142 Va. 567, 129 S. E. 336; *California Casualty Indemnity Exchange v. Industrial Accident Commission,* 190 Cal. 433, 213 P. 257; *Southern Surety Co. v. Galloway,* 89 Okl. 45, 213 P. 850; *In re Betts,* 66 Ind. App. 484, 118 N. E. 551; *Horton's Case,* 275 Mass. 572, 176 N. E. 648; *Industrial Commission of Ohio v. Ahern,* 119 Ohio St. 41, 162 N. E. 272, 59 A. L. R. 367.''

In the *Hill* case the Supreme Court of Washington further states: ''Respondent invokes the doctrine enunciated by the Supreme Court of Illinois in the case

of *Rainford v. Chicago City Ry. Co.,* 289 Ill. 427, 124 N. E. 643, 644, to the effect that: 'That which is reasonably necessary to the health and comfort of the employee, although personal to him, is incidental to the employment and service.'

"With this doctrine we are in accord, but it does not apply to a matter such as the mailing of a letter, which is wholly foreign to the employment upon which the person injured is engaged, and necessary neither to his health nor physical comfort.''

▮▮ We realize that the question for determination in this case, no exact formula can be laid down which will automatically solve every case. (*Cudahy Packing Co. of Neb. v. Parramore,* 263 U. S. 418, 44 S. Ct. 153, 154, 68 L. Ed. 366, 30 A. L. R. 532.) The decision in each case must be determined from the peculiar facts and circumstances appearing in the evidence. (*Ceisel v. Industrial Commission,* 400 Ill. 574, 579.) It is our conclusion that the act of Meyer turning the truck he was driving toward the west from his way, or course, in returning his employer's truck to his employer's place, although done in the general area of his employment, was not in the furtherance of his employer's business, nor within the scope of his employment, but made solely for his personal benefit.

It is further contended by the defendant that the court erred in giving plaintiff's instructions No. 4 and 9. The two instructions are as follows: "No. 4. If the jury believe from the evidence that any witness in this case has knowingly and wilfully sworn falsely on this trial to any matter material to the issues is this case, then the jury are at liberty to disregard the entire testimony of such witness except as it has been corroborated by other credible evidence or by facts and circumstances proved on the trial.''

"No. 9. The jury are instructed that while as a matter of law, the burden of proof is upon the plaintiff, Helen Olson Anderson, as Administrator de bonis non

of the Estate of Arlie Julius Olson, deceased, and it is for her to prove her case by a preponderance of the evidence, still, if the jury find that the evidence bearing upon the plaintiff's case preponderates in her favor, although but slightly, it will be sufficient for the jury to find the issues in her favor.''

It is contended by the defendant that the giving of these two instructions is reversible error for the reason that none of the given instructions in the whole series advise the jury as to what were the issues in the case.

In the recent case of *Schneiderman v. Interstate Transit Lines, Inc.,* 401 Ill. 172, the Supreme Court considered whether or not the giving of an instruction similar to No. 4 given in the present case was reversible error. The court stated that the instruction was cautionary. The suit was a crossing accident case. In that case it is stated by the Supreme Court, page 180, as follows :—''While it is true that in certain cases there may be material issues of law not apparent to the jury, yet, in an ordinary crossing accident case, where the jury is fully instructed, we believe something more than a possibility of the jury misapprehending the scope of the cautionary instruction is necessary to reverse a case where the record is without error otherwise.''

''We are not receding from our position that the matters material to a lawsuit should be made known to the jury before such instructions are given, but we cannot go outside of the record to speculate upon what issues they might have in mind when all the issues considered by counsel on both sides of the case were presented to the jury and it was given an opportunity to measure the materiality of the issues, or what facts are material to the issues, by what is pointed out in other instructions in the case.''

As to the liability of the defendant, Meyer, it was required that the two following legal issues be made

known to the jury. 1. If the defendant, Wesley Meyer, did not exercise ordinary care and caution in operating the truck he was driving and as a proximate cause thereof, Arlie Julius Olson lost his life, and the said Arlie Julius Olson was immediately prior to, and at the time of the accident, in the exercise of due care and caution for his own safety and that of the truck he was driving, then the plaintiff has a just claim to recover damages from the defendants resulting from the death of said Olson. 2. If the defendant, Wesley Meyer, was guilty of wilful and wanton misconduct operating the truck he was driving and as a proximate cause thereof, Arlie Julius Olson lost his life, then the plaintiff has a just claim to recover damages against the defendants resulting from the death of said Olson, although said Olson was not immediately prior to, and at the time of the accident, in the exercise of due care and caution for his own safety and that of his truck.

The only evidence at the trial that Wesley Meyer was guilty of negligence which proximately caused the accident was testimony tending to prove that he failed to give due and seasonable warning to Arlie Julius Olson of his intention to turn west from Highway No. 82 into the crossroad at Wolf's corner. It is not possible to conceive that the jury did not understand that the instructions given by the court applied to, and governed the conduct of Wesley Meyer in giving, or not giving, due and seasonable warning to Arlie Julius Olson of his intention to turn west from Highway No. 82.

It is our opinion after reading the given instructions that the legal issues were clearly presented to the jury by the instructions which pointed out the material facts, which the jury should consider in arriving at their verdict.

It is also contended by the defendant that the giving of Instruction No. 9 is reversible error, because it told the jury that although it was incumbent on the

plaintiff to prove her case by a preponderance of the evidence, still if the evidence preponderated only "slightly" in favor of the plaintiff's case, it would be sufficient to find the issues in favor of the plaintiff.

Instructions of that character, and in standard form, have very often been criticized by courts of review of this State. The giving of such an instruction at the request of a plaintiff is a dubious venture at the risk of the plaintiff. The giving of the instruction has been held not reversible error in cases where the plaintiff's evidence clearly outweighs the evidence of the defense. (*Wolczek v. Public Service Co. of Northern Illinois,* 342 Ill. 482; *Norton v. Clark,* 253 Ill. 557, 565; *Teter v. Spooner,* 305 Ill. 198.)

It is also urged by the defendant that the court should have directed a verdict in his favor at the close of all the evidence under the second count of the complaint charging wilful and wanton conduct on the part of the defendant, Meyer.

The last two mentioned contentions of the defendant require an examination of the evidence, which so far as deemed material to the two contentions will be summarized.

The defendant, Meyer, testified as follows: "I was some two hundred and fifty feet from the intersection when I looked into my rear view mirror, and saw this truck approaching at a faster rate of speed than I was traveling. At that time the truck was about 400 to 450 feet behind me. I put my arm out of the window, which was open, and held it straight out as far as I could and kept it there for a distance of 250 feet. I had no idea he was going around me. I put my arm out to give him a signal that I was going to turn. I applied the brakes before reaching the intersection. For about ten or fifteen feet I did not keep on my own side of the highway. I did not keep on my side of the highway until I got to the middle of the intersection. I went up to within ten or fifteen feet of the middle of the inter-

section. That corner has always been rough on the southwest corner, and I did not want to hit it. I do not recall making any statement that it was my fault to persons who were at the place of the accident after the trucks collided.

"There was a box on the truck I was driving for carrying grain and the box stuck out about a foot from the side of the cab, at least a foot. There was no mechanical device on my car, such as lights and so forth that could be operated in the cab indicating a left turn. The rear view mirror on my truck was on the left-hand side of the truck right at the edge of the door and fastened to a bracket about eighteen inches long."

At the coroner's inquest Meyer testified as here shown. Question: "Did you have a rear view mirror on your truck?" Answer: "Yes, but it didn't stick out quite far enough so you could get a clear view of it, like it should be." Question: "And where were you going at that time?" Answer: "Well, I was headed north and I was going to turn there at Wolf's corner and go west to Alva Brown's." Question: "And was there anyone back of you at the time?" Answer: "Well, I didn't see the other truck back of me." Question: "Did you give him a signal that you were going to turn?" Answer: "I stuck out my hand, but I don't know whether he saw it or not, my box is pretty wide." Question: "And, when did you first notice him, see him?" Answer: "Well, when he got even with my window." Meyer was alone in the truck at the time in question, and he was the only occurrence witness called by the defense.

Merton Swanson, who was riding in the truck with the decedent, Arlie Julius Olson, testified as here related. "When we overtook the truck being operated by Meyer, we were about fifty feet from the intersection and traveling about thirty-five or forty miles an hour. Arlie Olson, when he thought Meyer was not

going to turn, pulled out to pass. He blew his horn and started around him. I did not see any signal by the driver of the grain truck that he intended to turn. From the time I first saw him until the collision occurred, I did not see any hand or mechancial signal. As we came up behind the truck near the intersection he, (Meyer,) did not appear to slacken his speed. There was no sign or signal. As Arlie Olson pulled out to go around the grain truck, Meyer came over the black line right at the intersection and hit us. After the collision we tipped over and I got out and Meyer was standing alongside of us. Dale Willis and Clinton Snodgrass came along in a truck. After Olson and I got out of the truck, before we were taken to the hospital, I heard Wesley Meyer say, ''It's all my fault—I was going straight north.'' We were north of the center of the intersection when we started to pull across. I was riding on the right-hand side of the truck, and Meyer was on the left-hand side of the truck he was driving—that is, on the opposite side that I was riding on. He could have signalled and I would not have seen it. During the time we were over the left-hand lane for passing, I was directly in line with Meyer's truck where I could have observed his signal. Meyer turned left. He just gradually went over after we were alongside of him.''

Dale Willis testified as here stated: ''I am working as a carpenter at this time. On April 10, 1945, I was driving a stock truck for Rollin Nelson, and Arlie Olson was doing the same kind of work for Nelson. We were both on our way to Chicago with loads of cattle. I drove up to the scene of the accident and stopped. Swanson and Olson were coming across the road and a Mr. Dezel came and took the two men to the hospital. I saw Meyer and he told Rollin Nelson, while we were standing in a group of men there, that it was his fault

and that he was going north. I did not hear Meyer say that he intended to turn left at the crossing.''

Clinton Snodgrass testified as here stated: ''I am a farmer and I have lived in the neighborhood of Geneseo all my life. On the day of the accident, Rollin Nelson was hauling my stock to Chicago, and I was riding with Dale Willis who was driving the truck loaded with the stock. We were behind the truck being driven by Arlie Olson. I was at the place of the accident a few minutes after it happened. It was about five o'clock p.m. and it was light at the time. I saw the driver of the grain truck. I did not know him before that day. I did not know Arlie Olson during his lifetime, but I knew who he was and that he was working for Rollin Nelson. At the time of the accident, Dale Willis and I were in a group and I heard Meyer talking to Nelson. Meyer said, 'It's my fault.' That is all I can recall that he said.''

Rollin Nelson testified that he went to the place of the accident and when he arrived there he had a conversation with Wesley Meyer. That Meyer said, ''Rollin, it's all my fault; it's all my fault.''

Whether the negligent conduct of a defendant which resulted in injury to another amounted to wantonness is a question of fact to be determined by the jury, if there is any evidence in the record fairly tending to show such gross want of care as indicates a wilful disregard of consequences or a willingness to inflict injury. (*Lake Shore & M. S. Ry. Co. v. Bodemer*, 139 Ill. 596.) An intentional disregard of a known duty necessary to the safety of the person or property of another and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, make a case of constructive or legal wilfulness such as charges the person whose duty it was to exercise care with the consequences of a wilful injury. (Thompson on Negli-

gence, Secs. 20, 22.) *Walldren Express & Van Co. v. Krug*, 291 Ill. 472, 477. See also, *Layton v. Ogonoski*, 256 Ill. App. 461.

There is evidence in the record in this case from which the jury could find that the defendant, Meyer, did not see the truck being driven by the decedent, Olson, until the Olson truck was even with the cab window of the truck Meyer was driving and that Meyer did not give seasonable warning of his intention to turn west at Wolf's corner; that Meyer intended to go northward past Wolf's corner and turned his car to the west in front of the Olson truck, without seasonable warning when it was apparent that such heedless and reckless act would be liable to serious injury to life and property.

While this record is not free from error, we find no reversible error in the case. It is our conclusion that the issues were properly presented to the jury for their determination, and we think that their verdict is sustained by the evidence. The judgment of the trial court is therefore affirmed.

*Judgment affirmed.*