FRANCES WESSEL, DEPENDENT OF JOSEPH FREDERICK WESSEL, DE-CEASED, EMPLOYEE, APPELLANT, v. ST. LOUIS CAR COMPANY, EM-PLOYER, SELF-INSURER, RESPONDENT.—136 S. W. (2d) 388.

St. Louis Court of Appeals. Opinion filed February 6, 1940.

Motion for rehearing overruled February 20, 1940.

Writ of Certiorari denied April 2, 1940.

*Albert I. Graff, Louis L. Hicks* and *Herbert Bauer* for appellant.

*Lehmann & Lehmann* and *Watts & Gentry* for respondent.

HUGHES, P. J.—This is an appeal from the judgment of the Circuit Court of the City of St. Louis, Missouri, reversing a final award of the Missouri Workmen's Compensation Commission in favor of the (claimant) appellant and against the (employer) respondent herein.

On August 22, 1936, deceased and three other employees were engaged in applying the ceiling to a street car under construction in the shop of defendant when decedent suffered from heat exhaustion, from the effects of which he died on September 4, 1936.

The building in which Wessel worked was about two hundred feet from east to west and wide enough for six standard gauge tracks to be laid, with room for men to work around cars being built on them. The east wall was made up of sliding doors so constructed that when the doors were slid back to effect an opening fifty per cent of the entire east wall was open. The west wall was almost completely filled with windows which were kept open in hot weather. The north wall was a solid wall without windows. The south wall was full of windows, and also a large doorway through which trucks were driven. The floor was of concrete. From the floor to the roof of the building was a distance of approximately twenty-five feet. The roof was nearly flat and across it there was a raised portion with windows on each side for the purpose of ventilation, ordinarily called a monitor roof. The car in which Wessel was working was one under construction; the floor, sides and roof had been put on and with openings for windows along the sides and a door at each end. In performing the work the men stood on a trestle about ten inches high running the length of the floor of the car, to enable them to reach the ceiling of the car, and thus placing the employee's head and shoulders above the window openings and his head within a few inches of the ceiling of the car. Four men worked in the car at the same time. Eight or ten electric lights were installed on a board and two extension electric lights. The men worked in pairs, commencing at opposite ends of the car and working towards the middle. Each couple of men had an electric hand drill for use in the work.

The weather was extremely hot; from the 17th to the 28th of August forty-one deaths occurred from heat in the City of St. Louis; four occurring on the 22nd. The Government Weather Bureau record shows that on August 22, the temperature ranged from eighty-four to one-hundred-two. There is ample proof that Wessel suffered from heat exhaustion and died; that fact is not denied.

The sole controversy hinges around the question of whether there was any substantial evidence that Wessel's affliction was the result of an accident within the terms of the Workmen's Compensation Act;

that is, whether it arose out of the employment and in the course of the employment. The salient facts on that question will be referred to later, but first, as to the principles of law which must control our decision: While the findings of the Workmen's Compensation Commission must not be based upon mere speculation, guesswork or surmise, on the other hand when based on substantial evidence, in the absence of fraud, those findings are final and conclusive. [Baker v. Schladerbach, 131 S. W. (2d) 897.] And the court in determining the sufficiency of the evidence to sustain the Commissions finding, will look only to the evidence which is most favorable, adding thereto all reasonable inferences of fact to be drawn therefrom to support such finding and will disregard all opposing evidence, as is done in passing on a demurrer to the evidence in ordinary civil actions. [Carnahan v. Kurn, 113 S. W. (2d) 824; Rutherford v. Tobin Quarries, 82 S. W.. (2d) 918; Noto v. Hemp & Co., 53 S. W. (2d) 136; Moorman v. Central Theatres, 98 S. W. (2d) 987.]

When Wessel went to his work on August 22nd he was in good health and had not been sick. He complained about the heat at about. two P. M. but continued working until three P. M., quitting time; one witness says at that time he looked "all in."

George Wessel, a brother of decedent testified: That he worked alongside his brother; it was hotter around the electric lights than in other parts of the car; heat also came off the drills which they used overhead on the car ceiling; "I judge it was four degrees hotter in the car than in the shop aisle:" "I know it was hotter in the car. I can judge four degrees. The men sometimes had sweat pouring from them."

Frank Oberby testified: That he worked with the other three men in the car; they had eight or ten electric bulbs burning: "It. was cooler out of the car than inside the car:" Joseph Wessel complained of being hot, he said, "I am really hot;" "We went out to get a drink and told him to wet his handkerchief with ice water and put it on his head to cool him off:" "Everybody was hot when Joe said, 'I am really hot;' I was hot myself. We were all sweating plenty." "We had ten to twelve lights in both boards plus an extension light."

Marvin McKinney testified: "I worked with Joe Wessel and. his brother and Oberby." "Joe said it was doggone hot and I said yes." "I noticed it felt cooler when I stepped out of the car than where we were working next to the ceiling." "Q. What did you tell him?" (Referring to a conversation with a Mr. Sullivan). "A. I told him it was hot in the building and when you got up in the car it was warm when you were in the building and working. You take any factory, regardless, if you go up against the ceiling, naturally the heat goes up." "Q. When you get up to the ceiling of the car then

it is considerably hotter?'' "A. It is most naturally where you are working you are not working in the shop.''

George Wessel being recalled testified that on August 22 on occasions he left the car to get fresh air, a drink of water and to go to the toilet.

Denis Madden, who qualified as an air conditioning engineer testified as to the temperature in the car based on the temperature reported by the weather bureau at a remote place. While we doubt the value of such testimony as tending to show what the thermometer reading would be in the car, yet his testimony as an expert and from a scientific viewpoint may have been of some aid to the Commission in arriving at the conclusion that the heat was intensified by the place of employment.

Decedent was taken home in an automobile and immediately went to his room to lie down; some hours later he was found unconscious and taken to the hospital where it was found he was suffering from heat exhaustion; from the effects of which he died on September 4.

Different courts and different jurists in attempting to fix a rule of law in case of injury or death where the natural elements are involved have given expression to a stated rule but in somewhat different words.

In the case of Morris v. Dexter Mfg. Co., 225 Mo. App. 449, 40 S. W. (2d) 750, the Springfield Court of Appeals (Cox, J.) say, that the best reasoned cases hold that for freezing to be compensible under the Workmen's Compensation Act there must be something in the nature of the work that exposes the workmen to greater danger of freezing than others in the same locality are exposed. And in arriving at that conclusion he cites and quotes from the case of Consumers Co. v. Industrial Commission, 344 Ill. 152, 154 N. E. 423, 53 A. L. R. 1079, in which it is said that if the accident, under the circumstances of the employment, was merely a consequence of the severity of the elements to which persons in the locality, whether so employed or not were equally exposed it is not compensable.

This court in the case of Kripplaben v. Jos. Greenspon's Co., 227 Mo. App. 161, 50 S. W. (2d) 532 (SUTTON, C.) said that if the character of the employment is such as to intensify the risk, the resulting injury is compensible, and that an injury resulting from the elements, like any other injury, to be compensible, must arise out of the employment, as well as in the course of the employment. And the Morris case is cited.

The Kansas City Court of Appeals in the case of Van Kirk v. Hume-Sinclair Coal Mining Co., 226 Mo. App. 1137, 49 S. W. (2d) 631 (BLAND, J.) held, that the employer is liable where the work or method of doing it exposes the employee to the forces of nature to a greater extent than he would be exposed if not so engaged, or to a greater extent than others in the community are exposed.

The Supreme Court in the case of Shulz v. Great Atlantic & Pacific Tea Co., 56 S. W. 126 (WESTHUES, C.), while not laying down a stated rule, say as to the case then before it, however, it is self evident that the heat was more intense near these openings (baker's ovens) than elsewhere in the room.

Afterwards this court in the case of Moran v. Edw. Peterson Constr. Co., 56 S. W. (2d) 809 (BENNICK, C.) say, that the character of the employment itself must be shown to have been of a nature to have intensified the risk, and to have subjected the employee to a greater hazard than that faced by other people in the same locality. And in support of that rule cites the Kripplaben case, the Morris case, the Van Kirk case, and the case of Taylor v. City Ice and Fuel Co., 56 S. W. (2d) 812, decided on the same day by this court (BECKER, J.) and holding to the same rule.

And this court in the case of Bicanic v. Kroger Grocery & Baking Co., 83 S. W. (2d) 917 (HOSTETTER, P. J.), quoted with approval the rule as announced in the Moran case and the citations in support thereof.

Thus, while the several cases state the rule in somewhat different words the meaning is the same, and is the rule as stated in the Kripplaben case, which cites the Morris case; and the Morris case is based on the case of Consumers Co. v. Industrial Commission, *supra* (Illinois case) which states the rule to be that "If the accident, under the circumstances of the employment, was merely a consequence of the severity of the elements, to which persons in the locality, whether so employed or not, were equally exposed, it is not compensable." And the Kripplaben case following the principle of that rule says, that if the character of the employment is such as to intensify the risk, the resulting injury is compensible. We take this to be the correct rule as to this class of cases.

Then applying the facts in this case to that rule of law, there is substantial evidence that the accident (heat exhaustion) which Wessel suffered was not merely a consequence of the severity of the elements to which persons in the locality, whether so employed or not, were exposed; but on the contrary Wessel was exposed not only to the extreme heat of the day, to which persons in the locality whether so employed or not were exposed, but he was exposed to the additional and intensified heat of working inside and near the ceiling of a car which was within a building, and in the car were two electric drills in operation and a large number of electric lights, and working near the ceiling of the car and in a place in which all three of his co-employees say was hotter than outside the car.

Inasmuch as the Commission have the sole duty of passing upon the weight of the evidence and the credibility of the witnesses cases frequently arise wherein a finding either for or against the award would have to be approved by the Courts on Appeal, who can only

determine the one question, i. e. whether there was substantial evidence to support the award. This being true we could not say, in this case, that there was not substantial evidence before the Commission on which to base its award.

The judgment should be reversed, and it is so ordered. *Becker* and *McCullen, JJ.*, concur.