**W. C. CROW, Claimant, Appellant,**

v.

**MISSOURI IMPLEMENT TRACTOR COMPANY, Employer, and Hardware Mutual Casualty Company, Insurer, Respondents.**

No. 7570.

Springfield Court of Appeals.

Missouri.

March 20, 1957.

Motion for Rehearing or to Transfer Overruled May 2, 1957.

L. D. Joslyn, T. B. Russell, Charleston, for appellant.

Hyde & Purcell, George R. Wilhoit, Jr., Poplar Bluff, for respondents.

STONE, Judge.

In this proceeding under the Missouri Workmen's Compensation Law, the referee in the first instance, and the Industrial Commission of Missouri on review, found against W. C. Crow, the claimant; and, from a judgment of the circuit court affirming the final award of the Commission, claimant prosecutes this further appeal.

On August 21, 1954, the date of the alleged accident, claimant, then 62 years of age, was shop foreman for Missouri Implement Tractor Company (hereinafter referred to as the employer), a farm implement dealer at Charleston, Missouri. Claimant wrote job tickets, "oversaw the work," and "when there wasn't anybody else around" assisted in the work. While engaged with a fellow-employee, Ansel Goodale by name, in adjustment of a new International Harvester No. 2–ME corn picker in the employer's shop, claimant suffered a coronary occlusion which has resulted in permanent total disability. The sole issue is whether claimant sustained an "accident" within the meaning of Section 287.020(2). (All statutory references herein are to RSMo 1949, V.A.M.S.)

At the time of his injury, claimant was assisting in adjustment of the angle of elevation of the "elevator," that part of the corn picker which conveys the ears of corn on an endless chain from the husking unit backward and upward to the raised end of the elevator from which the corn drops into a wagon or trailer towed behind the corn picker. The elevator, made of heavy gauge steel, was eleven to twelve feet, "something like that," in length, with an open trough on the upper side about fourteen inches in width and eight inches in depth. The front and lower end of the elevator was attached to the rear end of the tractor frame, while the rear and upper end of the elevator was held in a raised position by two elevator bail rods (one on each side of the elevator) extending from "a little past half-way up the elevator where they attach to each side" down to the rear end of the tractor frame. The elevator was so connected that its angle of elevation, usually about forty-five degrees, might be varied by means of two turnbuckles (one on each side) in a complicated adjusting mechanism at the rear end of the tractor, without disengaging the elevator from its fixed support. To reach these turnbuckles, Goodale "had to lay on the floor and slide underneath" the tractor; but, the turnbuckles being "full of paint, of course, and new and hard to

turn," Goodale was unable, by means of the turnbuckles, to accomplish the desired purpose of lowering the elevator. Accordingly, Goodale told claimant that it would be necessary to disconnect certain links in the supporting mechanism, which would have permitted the elevator to fall unless otherwise supported. Claimant immediately said, "I will support the elevator," and assumed a standing position on the concrete floor under the elevator, facing forward toward the tractor, with his arms extended "straight up over my head" and with his hands "gripping" the sides of the elevator.

Goodale, lying under the rear end of the tractor, "tapped out" a link in the supporting mechanism on one side and adjusted the turnbuckle on that side, while the elevator still was supported by the mechanism on the other side. Then, with claimant standing in the above-described position, Goodale similarly "tapped out" a link on the other side, thus completely disengaging the elevator from its supporting mechanism. The weight of the raised end of the elevator, *estimated* by claimant at one hundred fifty to two hundred pounds, immediately dropped on claimant's hands and arms. "It was just so heavy it felt like it pushed my (claimant's) shoulders down—my arms down in my shoulders. Hurt across the bottom of my chest." However, claimant remained in the same position, "just held" the elevator, and told Goodale, "You will have to hurry." Within a minute or so, Goodale accomplished the desired adjustment, reconnected the supporting mechanism of the elevator, and relieved claimant of the weight of the raised end. With refreshing candor, claimant frankly conceded that his purpose in assuming the described position under the elevator was to support its weight; that he "expected it to drop" and knew that, when Goodale disconnected the supporting mechanism, the weight of the elevator would be imposed on his upraised arms; and, that he "didn't slip or trip or fall or anything

like that." Although claimant admittedly made no complaint at the employer's place of business that day, the causal connection between claimant's sustention of the elevator and the coronary occlusion diagnosed by his attending physician the following day is not disputed, and his ensuing permanent total disability is not denied.

The Commission found that claimant "sustained an abnormal strain while holding up the elevator" but that "this abnormal strain was not preceded or accompanied by any unusual or unexpected occurrence and, therefore, was not an accident as the same is defined by the Missouri Workmen's Compensation Act and judicial decisions." Claimant's counsel here contend, in substance, that the abnormal strain found by the Commission was, in and of itself, "a personal injury by accident and compensable," and that, even if it were necessary (as the Commission held but claimant denies) for an abnormal strain to be preceded or accompanied by an "unusual or unexpected occurrence" to bring it within the statutory definition of "accident" in Section 287.020(2), "the drop or fall of the elevator with such abrupt force that the employee could only sustain it at the expense of the abnormal strain" constituted such "unusual or unexpected occurrence."

Section 287.020(2) defines an "accident" as "an unexpected or unforeseen event happening suddenly and violently * * *." Although, as was pointed out in Alexander v. Saunders Mills, Inc., Mo. App., 289 S.W.2d 483, 489, much has been written (not all of which is wholly consistent or readily reconcilable) by our appellate courts concerning the term "unexpected or unforeseen event," it is now settled that the injury cannot constitute the "accident" or the "event" contemplated by the Compensation Law [Finerson v. Century Electric Co., Mo., 227 S.W.2d 740, 745(5), and cases there cited], and that "(t)he event which constitutes an accident is * * * clearly *a happening or occurrence in part at least*

*external to the body itself.*"[1] (All emphasis herein is ours.) This being true, obviously a strain, *in and of itself,* is not an "accident" within the meaning of Section 287.020(2), and a distinguished jurist properly observed, with care and discrimination, that a "strain could not have been regarded as abnormal *in the sense of being accidental unless it had been preceded or accompanied by some unusual occurrence.*" Howard v. St. Louis Independent Packing Co., Mo. App., 260 S.W.2d 844, 846. Loose statements by way of dicta *(invariably interpolated in cases*[2] *in which the courts have found that there was no "accident"),* which at first blush would seem to afford some foundation for the contention that all abnormal strains might be cast, without reservation, into the same category of "unexpected or unforeseen event[s]" as slips and falls, clearly should be qualified in their application as in the Howard case, supra,[3] for certainly a strain is not, *in and of itself,* "a happening or occurrence in part at least external to the body itself." See cases cited in footnote 1, supra. Concluding that the Commission's finding of an abnormal strain in the instant case neither constituted nor necessitated a holding that claimant had been injured by a compensable accident, we proceed to a consideration of the Commission's further finding that claimant's "abnormal strain was not preceded or accompanied by any unusual or unexpected occurrence."

The *only* respect in which claimant now urges that the occurrence under discussion was impressed with or affected by *unexpectedness,* recognized by our statutory definition [Section 287.020(2)] as a basic and indispensable ingredient of every "accident" [Larson on Workmen's Compensation Law, Vol. 1, Sec. 37.20, p. 512], is that the elevator on the No. 2–ME corn picker, a "new model" on which claimant had made no previous elevator adjustment, was somewhat heavier than the elevator on "older models" which claimant admittedly had supported at least "once or twice." We are by no means satisfied that, *even if* claimant had established that there was a substantial difference in the weights of the elevators on the "new model" and on the "older models," he thereby would have demonstrated that his strain "had been preceded or accompanied by some unusual occurrence" [Howard v. St. Louis Independent Packing Co., supra, 260 S.W.2d loc. cit. 846] and would have satisfied the statutory requirement of "an unexpected or unforeseen event." Section 287.020(2). For, evidence in the Howard case, supra, that the bull forequarter which "came down upon (claimant's) shoulder with 'an unusual force—more than ever before'" weighed two hundred seventy-five to three hundred pounds and was "heavier than most" [260 S.W.2d loc. cit. 845–846], and evidence in Palmer v. Knapp-Monarch Co., Mo.App., 247 S.W.2d 341, 343, that the box being

1. Joyce v. Luse-Stevenson Co., 346 Mo. 58, 63, 139 S.W.2d 918, 920(3); State ex rel. Hussman-Ligonier Co. v. Hughes, 348 Mo. 319, 325, 153 S.W.2d 40, 42(4); McDaniel v. Kerr, 364 Mo. 1, 11, 258 S.W.2d 629, 634; Killian v. Sterling Aluminum Products Co., Mo.App., 227 S.W.2d 526, 531.

2. State ex rel. Hussman-Ligonier Co. v. Hughes, supra, 153 S.W.2d loc. cit. 42; Tines v. Brown Shoe Co., Mo.App., 290 S.W.2d 200, 202; Keller v. Bechtel, McCone, Parsons Corp., Mo.App., 174 S.W. 2d 925, 927; Kendrick v. Sheffield Steel Corp., Mo.App., 166 S.W.2d 590, 593; Sciortino v. E. Salia & Co., Inc., Mo. App., 157 S.W.2d 535, 536; Meldrum v.

Southard Feed & Mill Co., 229 Mo.App. 158, 165–166, 74 S.W.2d 75, 80(6).

3. See also Palmer v. Knapp-Monarch Co., Mo.App., 247 S.W.2d 341, 344(6), where it was pointed out that "there must be some unusual occurrence, such as a slip, or fall, or abnormal strain *as a result of an unforeseen event,* in order to bring the person injured within the coverage of the Act"; and, Higbee v. A. P. Green Fire Brick Co., Mo.App., 191 S.W.2d 257, 258, where we find the emphatic comment that "the courts, in each of the cases in which the words 'abnormal strain' are used, have prefaced those words by the requirement that there be some unusual occurrence."

lifted by claimant, when her back was injured, was "a heavier box," in fact "the heaviest," did not supply the required proof of an "accident" in either of those cases.

But, notwithstanding the fact that claimant testified that, after the date of his injury but long prior to the hearing in this case, he "found out the difference" between the elevators on the No. 2–ME corn picker and on "older models," not only "from talking to the dealer" but also "from the manual that I had on this (No. 2–ME) picker," the record before us reflects nothing more than admitted estimates and inconclusive generalities as to materials, dimensions and weights. Concerning the *material* used in the elevator on the No. 2–ME picker (referred to as the "new model"), claimant simply stated that it was "heavy gauge steel." Nothing was said as to the material used in "older models." The *dimensions* of the elevator on the "new model" were *estimated* by claimant at "between, I would say, 11 and 12 feet, something like that," in length, "14 inches, I believe," in width, and "I would say about 8 inches" in depth. The dimensions of the elevator on "older models" were estimated at "7 inches wide and about 8 feet long, I think," with no estimate of depth. With respect to *weight,* the essentially determinative factor under claimant's theory of unexpectedness, the record is even more incomplete and unsatisfactory. Readily agreeing that, on the day of his injury, he had not supported the *entire* weight of the elevator on the "new model" (not even estimated by him), claimant gave "just an estimate" of one hundred fifty to two hundred pounds, "something like that," as to the weight then assumed by him. And, even though it reasonably might be inferred that the elevator on the "new model" was somewhat heavier than the elevator on an "older model," claimant's significant failure to offer so much as an estimate, either of the weight of the elevator on an "older model" or of the weight uneventfully sustained by claimant in prior adjustments, left a gaping void in the record

which rendered it impossible for the trier of the facts to venture even an informed guess as to the *difference* between the weight assumed by claimant on the day of his injury and the weights theretofore assumed by him in similar adjustments on other corn pickers.

■ The burden rested upon claimant to prove that he had sustained a compensable accident. Duff v. St. Louis Mining & Milling Corp., 363 Mo. 944, 948, 255 S.W.2d 792, 794(3); Finerson v. Century Electric Co., supra, 227 S.W.2d loc. cit. 745(5); DeLille v. Holton-Seelye Co., 334 Mo. 464, 470, 66 S.W.2d 834, 836(4). Recognizing that there is no indication that the findings and award of the Commission were predicated on disbelief of claimant's testimony [Sanderson v. Producers Commission Ass'n, 360 Mo. 571, 578, 229 S.W.2d 563, 567], nevertheless we must bear in mind that the award under consideration was adverse to claimant and that we are *not* here determining whether, *if* the award had been in favor of claimant, it might find necessary support. Karch v. Empire Dist. Elec. Co., 358 Mo. 1062, 1070, 218 S.W.2d 765, 770; Francis v. Sam Miller Motors, Inc., Mo., 282 S.W.2d 5, 13. Although, on this judicial review, we are authorized to determine whether, upon the entire record, the Commission reasonably could have made the findings and award under consideration, this does not mean that we are to substitute our own judgment on the evidence for that of the Commission; but, on the contrary, we may set aside its findings and award only if they are clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to such findings and award. Garrison v. Campbell "66" Express, Inc., Mo. App., 297 S.W.2d 22, 30(8), and cases there collected in footnote 11. Mindful of the state of the record before us, we cannot say that the Commission erred in its finding that there was no "unusual or unexpected occurrence."

In our view of them, the cases[4] upon which claimant relies do not militate against our conclusion. In the Johnson case, claimant's heart attack was the result "of being overcome by heat and over-exertion" [101 S.W.2d loc. cit. 127], and both the Johnson and Schulz cases fall into the category of heat prostration cases, where the determinative issue is whether, by reason of his employment, the employee has been exposed to a greater temperature hazard than that to which others in the same locality have been subjected.[5] The denial of benefits in the Hussman-Ligonier Co. case certainly affords no support for the instant claim. In the Neidert-United Transports case, claimant's injury "was the result of the *abnormal way he was doing the work* of removing the tire," and the element of unexpectedness was thought to have been supplied by a combination of circumstances, i. e., the unforeseen en-countering of "a condition of frozen lugs" *and "jerking and pulling and tugging with a pipe."* 352 Mo. loc. cit. 1096, 180 S.W.2d loc. cit. 739. In the Baird case, while claimant and another "were prying upward with a heavy piece of timber" in the "lifting of a truck of iron out of a hole," claim-ant *unexpectedly* received the entire load when the other man "let loose" suddenly and without warning. 172 S.W.2d loc. cit. 897.[6] By way of generalized summary, each of the cited cases is immediately dis-tinguishable from the instant case on the facts, and in each instance the award of the Commission was *affirmed.*

In the case at bar, claimant took his position under the elevator, intending to assume its weight, expecting imposition thereof upon him, and thereafter supporting such weight without change of position or outward physical manifestation.[7] *If* (as has been suggested) there was on claimant's part any *mental* misunderstanding or mis-calculation with respect to the weight thus voluntarily assumed by him in an intended manner and at an anticipated time, such misunderstanding or miscalculation cer-tainly was no more "a happening or occur-rence in part at least external to the body itself" [see cases cited in footnote 1, supra] than was the abnormal strain, and could not fairly be said to have constituted an "un-expected or unforeseen event" within the contemplation of the Missouri cases and Section 287.020(2). We search the tran-script in vain for any mishap save the in-jury itself; and, on the record before us, which we must take as it comes to us [Col-lier v. Smith, Mo.App., 292 S.W.2d 627, 630, and cases there cited], we are unable to escape the conclusion that the judgment of the circuit court must be affirmed "(u)nless * * * sympathy for this un-happy man, which we admit, be allowed to press our judgment beyond the utmost known fringe of the law, as declared in this jurisdiction" [Williams v. Kansas City Southern Ry. Co., 257 Mo. 87, 116, 165 S. W. 788, 796, 52 L.R.A.,N.S., 443], and blind us to the "virtue and truth in the maxim that 'Hard cases are the quicksands of the law.'" Metropolitan Nat. Bank of

4. Schulz v. Great Atlantic & Pacific Tea Co., 331 Mo. 616, 56 S.W.2d 126; John-son v. Scott County Milling Co., Mo. App., 101 S.W.2d 123; State ex rel. Hussman-Ligonier Co. v. Hughes, supra; Neidert v. United Transports, Inc., Mo. App., 167 S.W.2d 404; State ex rel. United Transports v. Blair, 352 Mo. 1091, 180 S.W.2d 737; Baird v. Gleaner Har-vester Corp., Mo.App., 172 S.W.2d 892.

5. Johnson v. Scott County Milling Co., supra, 101 S.W.2d loc. cit. 125(1); Wes-sel v. St. Louis Car Co., 235 Mo.App. 499, 136 S.W.2d 388, 391(3); Muesenfechter

v. St. Louis Car Co., Mo.App., 139 S.W. 2d 1102, 1104(2); Moran v. Edward Peterson Const. Co., Mo.App., 56 S.W.2d 809, 810(1).

6. In this connection, see the discussion in Palmer v. Knapp-Monarch Co., supra, 247 S.W.2d loc. cit. 345, concerning the Neidert-United Transport and Baird cases, supra.

7. In Howard v. St. Louis Independent Packing Co., supra, claimant's "knees buckled and he went down in a squatting position" under the weight assumed by him.

Kansas City, Mo. v. Campbell Commission Co., D.C.Mo., 77 F. 705, 710.

The judgment of the circuit court affirming the final award of the Industrial Commission must be and is affirmed.

McDOWELL, P. J., and RUARK, J., concur.