Madie A. HAASE, Appellant,

v.

INDEPENDENT AWNING COMPANY, Inc., and Aetna Casualty & Surety Company, Respondents.

No. 24301.

Kansas City Court of Appeals.

Missouri.

Feb. 7, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 4, 1966

Application to Transfer Denied May 9, 1966.

James L. Muller, Kansas City, for appellant.

Schwartz, Hoffman & Brockus, Leo T. Schwartz, Clarence B. Mitchell, Kansas City, for respondents.

MAUGHMER, Commissioner.

The appellant and claimant, Madie A. Haase, is the widow of Theodore R. Haase, who died on September 7, 1960. She filed a claim for Workmen's Compensation against his employer, the Independent Awning Company, Inc. and its insurer Aetna Casualty & Surety Company, alleging that his death arose out of and in the course of his employment. Her claim includes death benefits as dependent widow, a burial allowance of $374.98 and ten weeks' temporary total disability payments, which she alleges had accrued prior to the death of her husband. The parties stipulated that the insured, during his lifetime, had been paid $40 in compensation covering a period from June 25, 1960 until July 11, 1960, and medical aid of $95 for the same period. The referee and the Industrial Commission each denied her claim in its entirety. Upon review by the circuit court the award or denial of the claim was affirmed. She has appealed to this court.

The evidence shows and it is conceded that during a part of the summer of 1960, up to and including June 27, Theodore R. Haase, then 50 years of age, was an employee of defendant Independent Awning Company, Inc., and such employment was covered under the provisions of the Missouri Workmen's Compensation Act. The employer was fully insured by the defendant Aetna Casualty & Surety Company.

The defendant Awning Company manufactures, sells and installs aluminum awnings. The work is seasonal, being heaviest from April until July, and again from September through October. Mr. Haase worked as a helper. His duties included installing or helping to install awnings.

On Friday, June 24, 1960, the deceased and Robert Raines, foreman, went to a residence in Kansas City, Missouri for the purpose of installing awnings; some shrubbery about three feet high extended outward eight to ten feet from the house and the deceased put the bottom of his ladder outside of the bushes and the top up on the wall. Foreman Raines went around the corner to hang other awnings and shortly thereafter heard Haase's "ladder go down". Raines ran back and found insured getting up out of the bushes and off the edge of the window well. In response to Raines's inquiry if he was hurt, he said: "No, I don't think so". Raines hung the rest of the awnings with deceased lying down in the yard. Haase told Raines he had struck the left side of his body and it was "sore". Mr. Haase worked eight and a half hours on the following Monday, June 27, 1960, but none thereafter. There is no showing as to why his employment terminated. Deceased first consulted a physician, Dr. Thomas McHale, M.D., on July 1, 1960. Dr. McHale also saw him on July 2, 5, 6, 7 and 11. His medical report mentioned under history, the fall from the ladder, and recited that deceased had struck his head and back, and had fallen on brick. Dr. McHale found some blood on urinalysis and concluded there was a probable trauma to the bladder. He also found a fungus ear infection. X-rays of the skull were negative and revealed no fracture.

Dr. McHale referred Haase to the Altringer-Knight-Bunting Clinic for examination of the ear condition. He was examined by Dr. Bentley A. Nelson of that clinic on July 20, 1960. Dr. Nelson found wax in both ears and the canals slightly irritated. The ears were cleaned and the tympanic membranes then appeared to be normal and intact. Audimetric studies were obtained and these showed normal hearing in the lower frequencies with a moderate loss of hearing in each ear in the higher frequencies. Based upon his examination and tests, Dr. Nelson found no evidence of brain damage or injury to the middle ear or any head injury. The patient never returned to either Dr. McHale or to Dr. Nelson for any further attention.

On September 7, 1960, at about 10:30 a. m., the deceased was found lying unconscious on the sidewalk at 38th and Woodland Avenue. He had walked to this place from his home which was a few blocks distant. The sidewalk was dry and the weather was clear. The police and an ambulance were called and he was taken to General Hospital, where at 7:30 p. m. on that evening, he died.

Upon admission to General Hospital the examining physician reported an odor of alcohol. A small wound or cut was observed on the back of the head. Since he was unconscious upon admission, his wife was called and she was asked about his past conditions of health. She described his fall from the ladder on June 24, twelve weeks before, and said that since that time he had suffered with severe headaches.

Dr. Charles B. Wheeler, Jr., M.D., pathologist, and his assistant, Dr. Pope, performed an autopsy on deceased. They did not see him prior to death. They found skull fractures and two contusions over the right eye, all of which were fresh. There was no evidence of old and healed fractures or contusions. They did not find any indication of injury to the brain or brain stem that would have affected the organs controlling balance or equilibrium. It was Dr. Wheeler's opinion that if there had been any prior damage to the organs controlling equilibrium, it would have been manifested by atrophy of the eighth cranial nerve and there was no such atrophy. The post-mortem also revealed an enlarged heart. It was their conclusion that the fall backward on the back of his head on that same day

cause hemorrhage, which in turn, caused the brain to swell and directly resulted in death.

Mrs. Haase, claimant and widow, described numerous symptoms of injury which she observed after the accident of June 24. She said he came home on that evening "earlier than usual"; "all stooped over"; "he was pale, his eyes were awful glassy"; "his head was a-hurting"; "his back was a-hurting", and "his ears felt like they were stopped up". She observed a bruise on the back of his head. He was nauseated. His appetite was poor. He was nervous. When he operated the lawn mower he would get tired and dizzy and would sit down. He perspired and was irritable. He lost weight. On one occasion he cried and said: "I don't think I'm going to be here very long". He became careless and absent-minded. He couldn't watch television and said his eyes didn't focus right. She observed a yellow discharge on his bed pillow. He seemed to be losing his hearing. She described his health prior to June 24 as good.

Upon cross-examination Mrs. Haase admitted that her husband had a drinking problem, which she described as periodic. She said this was "partly" the cause of their being divorced in 1954. They remarried in 1956. He was off work at times because of drinking. The witness, foreman Raines, testified that Haase told him he was an alcoholic. He said he saw deceased a month or more after June 24, and he had been drinking. The General Hospital record also included a diagnosis of "diabetes by history".

It is claimant's theory that deceased, in the accident of June 24, sustained a brain injury—damage to his vestibular apparatus and function (sense of balance) which caused him on September 7 to fall over backward and sustain a skull fracture or fractures which led to hemorrhage and brain swelling, culminating a few hours later in death. More particularly, claimant contends that the June 24 fall resulted in

damage to the vestibular nuclei in the brain stem or damage to the labyrinth in the ears, either of which could and likely would disturb the sense of equilibrium and hence result in the fall of September 7, which quickly terminated life.

To lend professional support, plausibility and possibly probability to her position, claimant submitted the testimony of Dr. Charles M. Poser, M.D., neurologist, and Dr. Morton Jacobs, M.D., psychiatrist. Neither of these medical experts ever saw the deceased. In response to hypothetical questions which described the circumstances of each fall and the array of symptoms as detailed by Mrs. Haase, each doctor expressed the opinion that deceased had suffered a concussion and resultant brain injury in the ladder fall of June 24; that the vestibular nuclei and eighth cranial nerve had been damaged, resulting in impairment of equilibrium control and leading to the final fall ten weeks later, which directly and almost immediately caused death.

We set forth in full the main and pertinent parts of the final award of the Commission:

"The Commission, first having considered the whole record, the evidence heretofore adduced, the stipulations of the parties, briefs and extended oral argument, finds and concludes as follows, to-wit:

"That the employee, Theodore R. Haase, sustained an accident on June 24, 1960, arising out of and in the course of his employment with the Independent Awning Company, Inc. but that he sustained no compensable disability as a result thereof. We further find that the dependent widow, Madie A. Haase, has failed to prove that there was a causal relationship between the accident aforesaid and the death of her husband, the said Theodore R. Haase, on September 7, 1960.

"Compensation, therefore, must be and the same is hereby denied.

"Claimant's theory, if we correctly understand it, is that (1) the deceased employee sustained injury to the vestibular nuclei in the brain stem or to the labyrinth in the ears as a result of the accident of June 24, (2) that this caused him to fall on September 7 and (3) that the fall resulted in skull fracture and subdural hemorrhage which were the immediate causes of death.

"Without fencing with each of the numerous contentions advanced in behalf of claimant's hypotheses, we are convinced that this theory of the case can only be supported by piling favorable inference on favorable inference and these only if we exclude all other reasonable explanations not favorable to the advanced theory. For example, claimant would have us find that the deceased fell on September 7 as a result of a latent brain injury sustained on June 24. To do this we would have to ignore the following possibilities which, under the evidence, we believe are equally attractive; that he fell from lightheadedness or fainting (deceased had an enlarged heart); that he fell from acute alcoholism (deceased was a heavy drinker if not an outright alcoholic); or that the fall resulted from diabetic coma (deceased was a mild diabetic). In fine, we are asked to indulge in the rankest kind of guesswork, conjecture and speculation. Our fact finding function does not permit us to tramp these forbidden fields".

In claimant's first assignment of error it is asserted that the Commission erred in "ruling that claimant failed to prove a causal connection" between the accident of June 24, and deceased's death on September 7. She asserts (a) "The causal relationship was established without any prohibited piling of favorable inference on favorable inference", and (b) "The evidence does not establish or support other causes as being equally reasonable with that advanced by claimant so as to constitute failure of her proof to remove her case from the realm of speculation and conjecture", and (c) that

although the Commission considered her expert medical opinion evidence, it "erroneously believed the referee had correctly sustained objections to such evidence".

Her second and only other assignment is that the Commission failed and refused to make full and complete "rulings of law" as requested. These requested rulings included the following:

(1) Does the Commission approve the "various rulings" of the referee as to admissibility of evidence?

(2) Was there competent, substantial evidence to establish:

(a) Was deceased dizzy prior to the second fall and if so, was the dizziness caused by the first fall?

(b) Was the second fall caused by internal rather than external conditions?

(c) Was deceased under the influence of alcohol at the time of his fall?

(d) Was deceased suffering from a brain injury which caused the second fall?

▮ It is our opinion that the findings of the Commission as set forth in the Final Award are sufficient to determine the case and it was not required to answer the specific questions as propounded by claimant and denominated Findings of Fact or Findings (Conclusions) of Law.

▮ In a Workmen's Compensation case claimant carries the burden of proof and must "produce evidence from which it may reasonably be found that the injury or death resulted from the cause for which defendant would be liable." Seabaugh's Dependents v. Garver Lumber Mfg. Co. et al., Mo. en Banc., 355 Mo. 1153, 200 S.W.2d 55, 62; Welker v. MFA Central Co-operative et al., Mo.App., 380 S.W.2d 481. Unless this burden is met and carried, even an affirmative finding by the Commission may not stand. The burden here was on claimant to show not only that the deceased suffered an accidental injury arising out of and

in the course of his employment, but that his death resulted from such injury. Kerby v. Missouri State Highway Commission et al., Mo.App., 238 S.W.2d 464, 469.

The proper review procedure in a Workmen's Compensation case was stated by this court in Love et al. v. Land et al., 356 S.W. 2d 105, 106, 107, as follows:

"The duty and scope of review by this court and by the circuit court in a workmen's compensation case were well and fully stated in Long v. Mississippi Lime Co. of Mo. et al., Mo.App., 257 S.W.2d 167, 170:

'An appellate court, in reviewing the evidence upon the basis of which the industrial commission made its award, must view the evidence in the light most favorable to the successful party below. Harper v. Home Imp. Co., Mo.Sup., 235 S.W.2d 558. Neither the circuit court nor the appellate court may substitute its judgment on the evidence for that of the commission. Both courts are authorized and bound to decide whether the commission reasonably could have made its findings and reached its result upon consideration of all of the evidence before it, i. e. whether the award made by the commission is supported by competent and substantial evidence upon the whole record, Constitution of 1945, Art. V, § 22, V.A.M.S. (and cases cited)' ".

The Springfield Court of Appeals (Crow v. Missouri Implement Tractor Co. et al., 301 S.W.2d 423, 427) said it this way:

" * * * nevertheless we must bear in mind that the award under consideration was adverse to claimant and that we are *not* here determining whether, *if* the award had been in favor of claimant, it might find necessary support. Karch v. Empire Dist. Elec. Co., 358 Mo. 1062, 1070, 218 S.W.2d 765, 770; Francis v. Sam Miller Motors, Inc., Mo., 282 S.W. 2d 5, 13. Although, on judicial review, we are authorized to determine whether, upon the entire record, the Commission reason-

ably could have made the·findings and award under consideration, this does not mean that we are to substitute our own judgment on the evidence for that of the Commission; but, on the contrary, we may set aside its findings and award only if they are clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most fa·· vorable to such findings and award".

This court recently in Jacobs v. Bob Eldridge Constr. Co., Inc. et al., 393 S.W.2d 33, 35, defined the scope of review and said:

"In a Workmen's Compensation case, the duty of the reviewing court is to determine whether the award of the Industrial Commission is supported by competent and substantial evidence on the whole record, but it cannot substitute its own judgment on the evidence for that of the Commission. V.A.M.S., Const. of Missouri, Article V, Sec. 22. Nevertheless, the reviewing court is empowered to decide whether the Industrial Commission could have reasonably made its findings and reached its results on a consideration of all the evidence before it and should modify, reverse, remand or set aside a decision of the Industrial Commission if it is clearly contrary to the overwhelming weight of the evidence".

On the question as to whether or not a second accident (which standing alone is not compensable) resulted from an earlier accident (which was compensable) the court in Oertel v. John D. Streett & Company, Inc. et al., Mo.App., 285 S.W.2d 87, 96, said:

"Whether a subsequent incident or accident is a part of a continuous chain of causation flowing from the original accident, or is an independent intervening agency, is a question of fact to be determined in each case by the Commission. If there is competent and substantial evidence on the whole record in support of

the conclusion reached, the Commission's finding will not be disturbed on appeal".

■ It is clear that circumstantial evidence is admissible to prove or disprove a claim but as indicated in the opinion in Shrock et al. v. Wolfe Auto Sales, Inc., Mo., 358 S.W.2d 812, 815, the Commission must weigh such evidence and then declare a conclusion.

"There is of course no objection to the proof of either a claim or a defense to a claim by circumstantial evidence (100 C.J.S. Workmen's Compensation § 547 (5), p. 595; Mulcahy v. Terminal R. Ass'n, (Mo.App.) 123 S.W.2d 235), but, neither may a fact be found, nor a claim or defense, nor an award be based upon mere speculation, suspicion or conjecture. 100 C.J.S. Workmen's Compensation § 547(3), p. 590. * * * As to all the evidence, conflicting inferences may have been permissible but if so the commission had a choice (100 C.J.S. Workmen's Compensation § 763(5), p. 1202) as it does with the credibility of witnesses and the weight to be given conflicting testimony".

In Greer v. Missouri State Highway Department et al., Mo.App., 362 S.W.2d 773, the employee had arteriosclerosis and claimant contended that an incident at work caused a heart attack which occurred approximately two weeks later. The court held that it would be speculation and surmise to connect the two events and affirmed the award denying recovery.

Appellant has cited more than 70 cases which she says support her position. She calls our attention to Heppner v. The Atchison, Topeka and Santa Fe Ry. Co., Mo., 297 S.W.2d 497. This was an action for wrongful death. As in our case, the proof as to causation was supplied by circumstantial evidence and answers to hypothetical questions. The verdict and judgment was for plaintiff and it was affirmed. In the case before us we have a Commission finding not for claimant, but against her.

Had the Commission found for claimant, the Heppner case would seem more likely to be applicable. American Veterinary Laboratories v. Glidden Co. et al., 227 Mo. App. 799, 59 S.W.2d 53 and Krug v. Mutual Life Ins. Co. of New York, 235 Mo.App. 1224, 149 S.W.2d 393, cited by appellant are subject to the same comment.

■ Appellant insists that the Commission's findings, together with the award, constitutes a conclusion of law, which an appellate court may review and determine anew, as distinguished from a factual finding, which an appellate court must approve if it has substantial and credible evidentiary support. She says further that in such a re-examination we must view the evidence in the light most favorable to claimant. We disagree with this contention. As we view the award of the Commission it is a factual finding that claimant failed to meet the burden of proof requirement resting upon her, to show that deceased's death on September 7, resulted from and followed in the wake of his fall on June 24. It further expressed the conclusion that to so hold would require indulging in guesswork, conjecture and speculation and the piling of inference on inference. Claimant says the question as to whether or not such a finding would require piling inference on inference presents a question of law which the circuit court on review, and this court on appeal, must decide. Again we do not think so. Stripped of its surplusage and trimmed down to its essential requirements, the award rules: (1) claimant failed to establish factually, in the judgment of the Commission, that deceased's death resulted from the first accident and (2) consideration of all of the evidence makes it appear likely that the deceased's death on September 7, resulted from independent causes—possibly diabetes or alcoholism, or a stroke. We say frankly that we are unable to determine to our complete satisfaction the actual cause of death. However, we believe claimant failed to establish to a reasonble degree of sureness the exact cause, and giving effect to the medical findings of Dr. McHale and Dr. Nelson,

who saw and examined deceased, and the autopsy findings, we are inclined to seriously doubt if the June 24 fall was the actual and primary cause. Certainly we are unable to say that the Commission's award denying the claim and in effect holding it was not shown that the death was caused by the June 24 accident is not supported by the evidence or is clearly contrary to the overwhelming weight of the evidence. We would be required to so find and hold before we would be justified in reversing the judgment of the circuit court which affirmed the award. These findings likewise lead to the conclusion that claimant is not entitled to recover a burial allowance or compensation benefits covering the period from July 11, 1960 until the insured's death on September 7, 1960.

It appears that the award is supported by substantial, credible evidence and the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.